(No. 18099.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
GEORGE LYLE UPSON, Appellant.

*Opinion filed February 21, 1930.*

WOOLSEY & LUCAS, and GLENN RATCLIFF, guardian *ad litem,* for appellant.

OSCAR E. CARLSTROM, Attorney General, and ROYCE A. KIDDER, for appellee.

Mr. COMMISSIONER PARTLOW reported this opinion:

This is an appeal from an order of the county court of Fulton county assessing an inheritance tax of $1267.20 against appellant, George Lyle Upson, under the last will and testament of Lucy M. Wright, deceased.

The testatrix died at Table Grove, in Fulton county, on January 22, 1917. Her last will and testament was admitted to probate and an executrix was appointed. The testatrix left surviving her as her only heirs-at-law, Albert Upson, a brother, and three sisters, Martha L. Taylor, Hannah T. Wright and Sarah M. Hummel. Gabrelia Hughes and Sarah Barnhart were foster-children of the testatrix who had never been adopted. George Upson, a nephew of the testatrix, died November 19, 1919, leaving four minor children surviving him, including appellant.

The provisions of the will were as follows: By article 1 the testatrix gave to her executors, as trustees, her homestead in the village of Table Grove, including three lots and 17½ feet off of the north end of three other lots, also all her property in the city of Galesburg, to hold, control and sell, the income therefrom to be used for the support and maintenance of her sister Martha L. Taylor while she lived and for the payment of the expenses of her last illness and funeral expenses. She directed the trustees to sell the real estate and invest the proceeds in first mortgage loans so as to produce the greatest income. After the death of the sister the trustees were to use the income, and such part of the principal as they might deem necessary, to edu-

cate the children who were then born or who might thereafter be born to her nephew, George Upson, until the youngest child received a high school education, and then the fund was to be divided, share and share alike, *per stirpes,* among the children of George Upson. By a codicil this last article was modified by giving to Sarah Barnhart the lots adjacent to the homestead but not including the lots on which the house was located. By article 2 she directed her executors to sell to the highest bidder at public sale all her farm lands, one-half of the proceeds to be invested in other farm lands in Knox county, the title to be taken in the name of George Upson for life with remainder to his children, share and share alike, *per stirpes.* In case Upson died without children or descendants thereof the land was to go to the sisters of Upson. In case either sister died leaving issue, the issue was to take the share of the deceased parent. The land was given to Upson for life upon condition that he did not lend any financial aid to the wife of Arthur Upson, and if he did lend such aid the land was to go to his children. By article 3 she directed that out of the remaining one-half of the proceeds of sale of the farm lands all her debts, funeral expenses, costs of administration, costs arising from the sale of real estate, and the pecuniary legacies, should be paid and the remainder should go to the trustees, to hold under the same terms as were provided in article 1 of the will. By article 4 she gave to Sarah Barnhart $600 in full payment for all services rendered to the testatrix during her lifetime. She gave to Gabrelia Hughes $600, conditioned that no extra bill for services be charged against the estate. By article 5 she gave to Sarah M. Hummel $1000. By article 6 she gave to Martha L. Taylor all household furniture, a piano, canned fruit in the cellar, dishes and all household goods in the home in Table Grove. By article 7 she gave several specific articles of personal property, including three bequests of $25 each and a bequest of $50 to the Presbyterian church. The will con-

tained no residuary clause and made no disposition of the personal estate except as above stated.

Hannah T. Wright filed a bill in the circuit court of Fulton county to contest the will and a prolonged and expensive litigation followed. The jury found against the will and a decree was entered setting it aside. Upon appeal to this court the decree was reversed and the cause remanded. (*Wright* v. *Upson,* 303 Ill. 120.) After the case was reinstated in the circuit court a settlement was agreed upon. The court entered a decree approving the settlement, which provided that all expenses of litigation were to be first paid out of the estate and the balance divided, forty per cent to the four minor children of George Upson and sixty per cent to the three sisters and Gabrelia Hughes and Sarah Barnhart. The decree provided that the will should remain the will of the testatrix.

After the decree was entered the executrix converted the estate into cash, paid all expenses of litigation and administration, and made a report to the circuit court showing a balance of $56,771.85, which report was approved. On February 23, 1923, the county judge appointed an inheritance tax appraiser. At the hearing the question was raised as to whether the tax should be assessed under the terms of the settlement or under the terms of the will. The appraiser held that the tax should be determined under the provisions of the will. He refused to allow deductions of $18,822.76, being the expenses incurred in the will contest. He held that the cash value of the life interest of George Upson was $3000; that the cash value of the life interest of Martha L. Taylor was $3373.83; that the value of the interests of Sarah Barnhart, Gabrelia Hughes and Sarah M. Hummel were $1330, $600 and $1000, respectively. He valued the farm lands in Fulton county at $56,400, all other real estate at $11,380 and the personal property at $27,889.99. He allowed credits and deductions of $21,015.38 for debts and costs of administration, leaving a net

estate of $74,654.61. He deducted from the net estate the interests of George Upson, Martha L. Taylor, Sarah Barnhart, Gabrelia Hughes and Sarah M. Hummel, amounting to $9303.83, leaving $65,350.78 as the value of the estate taken by the four minor children of George Upson under the will. He found that the interests of the four children of George Upson were subject to taxation, and upon the assumption that but one of the four children would survive the life tenants, George Upson and Martha L. Taylor, he computed the tax at the highest rate and in the greatest amount that any contingency would warrant. He allowed only one exemption under section 25, of $2000, leaving $63,350.78 as the taxable value of the property received by appellant, George Lyle Upson, which at two per cent made a tax of $1267.02. Appellant appealed to the county court, where the evidence taken before the appraiser was considered by agreement and some additional evidence was heard. The court entered an order fixing the tax as found by the appraiser. From the order entered this appeal was prosecuted.

Appellee contends that on this appeal there is no question presented for review because no exceptions were taken to the order of the court and preserved in the bill of exceptions. Previous to the amendment of section 81 of the Practice act in 1911 there would have been much force in this contention. The effect of the amendment was considered in *Miller* v. *Anderson,* 269 Ill. 608, and *Pittsburgh, Cincinnati, Chicago and St. Louis Railway Co.* v. *Chicago City Railway Co.* 300 id. 162, and it was held that the common law requirement of exceptions to rulings sought to be reviewed is obviated by the amendment of 1911.

Appellant insists that the tax was not assessed as provided by statute or as provided in the will.

The assessment of an inheritance tax in this State is a statutory proceeding and is governed entirely by the provisions of the statute. Section 1 of the Inheritance Tax

act of 1909, which was in force when the testatrix died, provides for an exemption of $20,000 to every brother and sister of the decedent and an exemption of $2000 for every niece and nephew or lineal descendant of either. The rate of taxation on the latter was $2 on every $100 of the market value of the property received. Section 2 provides that when any property, or interest therein or income therefrom, shall pass or be limited for the life of another, or for a term of years, or to terminate on the expiration of a certain period, the property shall be appraised immediately after the death of the decedent, and the value of the life estate, term of years or period of limitation shall be fixed upon mortality tables, using the interest rate of five per cent, and the value of the remainder shall be ascertained by deducting the value of the life estate from the fair cash market value of the property so limited, and the tax so assessed shall be immediately due and payable. Section 25 provides that when property is transferred or limited in trust or otherwise and the rights or interests or estates of the transferees or beneficiaries are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed at the highest rate which on the happening of any of said contingencies would be possible, and such tax shall be due and payable forthwith. It also provides that upon the happening of any contingency whereby the property, or any part thereof, is taxable at a rate less than the rate imposed, such person shall be entitled to a refund as therein provided.

An inheritance tax is a tax on the right of succession and not upon the estate. The residuary estate vested in the trustees upon the death of the testatrix and the succession tax accrued at the time the estate vested, and the tax was due and payable as of the date of the death of the testatrix. (*People* v. *Lowenstein*, 284 Ill. 126; *Ayers* v. *Chicago Title and Trust Co.* 187 id. 42.) The value of the estate was the value at the death, less indebtedness of

the testatrix and the expenses of administration. Money lawfully spent by the executrix to defend the contest of the will was a part of the expenses of administration. (*Connell* v. *Crosby*, 210 Ill. 380.) No changes of title, transfers or agreements of those who succeed to an estate, either among themselves or with strangers, can affect the tax, and all questions concerning the tax must be determined as of the date of the death of the testatrix. (*People* v. *Pasfield*, 284 Ill. 450; *People* v. *Tatge*, 267 id. 634.) Money paid out by the executrix under an agreement to compromise a threatened suit is no part of the expenses of administration. When the entire residuary estate vests in residuary legatees at death, if they agree to pay a certain sum to one who agrees not to contest the will, such sum is taxable to the residuary legatees and not to the party to whom the money was paid. (*People* v. *Kaiser*, 306 Ill. 313; *In re Estate of Graves*, 242 id. 212.) In *People* v. *Union Trust Co.* 255 Ill. 168, the widow repudiated an ante-nuptial contract, renounced the will and made a compromise agreement to avoid litigation, by which she received more than under the contract and will but less than she would be entitled to under the statute, and it was held that the amount which she would have received under the contract and will was the amount on which she should pay an inheritance tax. It has also been held that the tax should be assessed at the highest rate possible under section 25, on the theory that there will be but one survivor of the remaindermen. *People* v. *Starring*, 274 Ill. 289; *People* v. *Freese*, 267 id. 164; *People* v. *Byrd*, 253 id. 223.

The farm lands sold for $56,400; the homestead in Table Grove, consisting of the two lots on which the house was located, sold for $3500; the vacant lots adjacent to the homestead, which went to Sarah Barnhart, sold for $730; the real estate in Galesburg sold for $7150—making a total of $67,780 as the value of the real estate. The

personal estate was $27,889.99, making a total estate of $95,669.99. Under article 1 of the will $3500 from the sale of the homestead and $7150 from the sale of the Galesburg property, making a total of $10,650, went into the life estate of Martha L. Taylor, with remainder for the education of the children of George Upson. Under article 2 one-half of the proceeds of the sale of the farm lands, amounting to $28,200, was to be invested in farm lands in Knox county, title to be taken in George Upson for life with remainder to his children. Under article 3, out of the other one-half of the proceeds of sale of the farm land, the debts of the estate, cost of administration and the pecuniary legacies were to be paid. This was a valid provision of the will which the testator had a right to make. (*Williams* v. *Williams,* 189 Ill. 500; *Reid* v. *Corrigan,* 143 id. 402.) The debts and costs were $21,015.38, leaving $7184.62 with which to pay legacies. The legacies were, $600 to Sarah Barnhart, (in addition to $730 from the sale of the vacant homestead lots,) $600 to Gabrelia Hughes, $1000 to Sarah M. Hummel, $50 to the Presbyterian church, and three bequests of $25 each, making a total of $2325 in pecuniary legacies, which amount deducted from the $7184.62 left a balance of $4859.62, which under article 3 was to be held by the trustees under the same terms as were provided in article 1. This amount added to the $10,650 made a total of $15,509.62, which the trustees were to hold, under article 1, for Martha L. Taylor for life, with remainder for the benefit of the children of George Upson. The will contained no residuary clause. There is no evidence that any part of the personal estate of $27,889.99 went into the life estate of either George Upson or Martha L. Taylor, therefore the personal estate of $27,889.99 descended as intestate property to the brother and sisters of the testatrix, and it was improperly taken into account in determining the tax due from the children of George Upson. Under section 2 of the Inheritance Tax

act the values of the life estates of Martha L. Taylor and George Upson were to be fixed as of the date of the death of the testatrix, upon mortality tables, at the rate of five per cent. George Upson was thirty-eight years old and the value of his life estate in $28,200, under the mortality tables, was $19,309.95, which amount deducted from the $28,200 left $8890.05 as the value of the remainder to his four children. Martha L. Taylor was sixty-seven years old and the value of the life estate of Martha L. Taylor in $15,509.62 was $5604.39, which sum deducted from the $15,509.62 left $9905.23 as the value of the remainder to the four children of George Upson. The two amounts, $8890.05 and $9905.23, made a total of $18,795.28 as the value of the remainder which went to the children of George Upson. The tax on this amount, less an exemption of $2000, should be assessed to appellant under section 25. He insists that prior to the assessment his father had died and the balance of the estate became fixed in the four children; that therefore there were three other exemptions of $2000, and the tax should be assessed to each child. The tax must be assessed, as provided by the statute, as of the date of the death of the testatrix, at the highest rate possible, and the assessment was properly made against appellant alone. After the tax is assessed under section 25 the parties will be entitled to a refund, which they may secure in proper proceedings under that section.

The order assessing the tax is reversed and the cause remanded.

Per Curiam: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Order reversed and cause remanded.*