# Richmond

THE LYNCHBURG TRUST AND SAVINGS BANK, SOLE SURVIVING EXECUTOR OF ANNIE CATHERINE MUNDY, DECEASED v. COMMONWEALTH OF VIRGINIA.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*J. Vaughan Gary* and *S. V. Kemp,* for the plaintiff in error.

*W. W. Martin* and *Henry R. Miller, Jr.,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The Lynchburg Trust and Savings Bank, sole surviving executor of Annie Catherine Mundy, deceased, filed an application for the correction of an alleged erroneous assessment of inheritance tax made by the Department of Taxation on February 25, 1931, against the estate of its decedent, whereby the estate was charged with taxes aggregating $75,517.85, which was paid under protest. It was contended that the tax should have been $57,589.12, and a refund of the difference of $17,928.73 was requested. The trial court denied the relief and upheld the tax as assessed by the Department of Taxation.

The parties agreed upon the facts and a hearing was had upon their stipulation in writing which was made a part of the record.

Annie Catherine Mundy died on March 2, 1930, leaving a last will and testament which bore the date of March 23, 1928. The will was admitted to probate in the clerk's office of the Circuit Court of Rockbridge county on March 7, 1930, and The Lynchburg Trust and Savings Bank and Dr. John W. Dillard duly qualified as executors of the estate. The executors performed their duties as such until May 17, 1930, when Dr. John W. Dillard died, leaving The Lynchburg Trust and Savings Bank as the sole surviving executor.

Annie Catherine Mundy was at the time of her death a widow and she left no lineal ancestor or lineal descendant surviving her. However, there survived her one brother, John E. Johnson, who, had she died intestate,

was under the statute of descents and distribution her sole and only heir at law and distributee.

The net estate of Mrs. Mundy after the payment of her debts amounted to $1,051,069.80. By her will she provided for the payment of her debts and directed that all inheritance and estate taxes due from her estate or from the beneficiaries of her will be paid from her estate and that no portion of such taxes be charged to the beneficiaries under the will. She made numerous specific bequests and by the residuary, or eleventh paragraph of her will, she devised and bequeathed to her friend Dr. John W. Dillard all of the rest and residue of her estate. This residuum was of the value of $647,069.80, and included the tangible personal property of the value of $3,849.25.

John E. Johnson, the brother of Mrs. Mundy, shortly after her death claimed that her will was invalid and that he, as her brother and as her sole heir and distributee, was entitled to share in the estate. He employed counsel for the purpose of instituting legal proceedings to test the validity of the will and particularly the residuary clause. No such proceedings were actually instituted, but he and Dr. Dillard compromised their differences and entered into a written agreement on March 25, 1930, whereby it was agreed that the tangible personal property should be delivered to Dr. Dillard and that the balance of the residuum should be equally divided between himself and Dr. Dillard.

After the execution and the delivery of the agreement to the executors of the estate, they, on April 9, 1930, delivered to Dr. Dillard all of the tangible personal property but no other part of the estate was ever delivered to or actually received by him.

Dr. Dillard, who lived in Lynchburg, died on May 17, 1930, within one year after the death of Mrs. Mundy and before actually receiving the share of her estate to which he was entitled and before the tax on said share had been assessed or paid. At the time of his death John E. Johnson had not actually received the share to which he

was entitled under the contract of March 25, 1930, and at that time no taxes had been assessed or paid upon the property to which he was entitled.

Dr. Dillard left a will and after making certain devises and bequests gave the residuum of this estate to his wife and children.

John E. Johnson died on February 9, 1931, within one year of the death of Mrs. Mundy. He left a last will and testament bearing date of January 17, 1916, and a codicil thereto bearing date of April 7, 1930, whereby his estate was bequeathed to his wife and son and certain specific legatees and certain Virginia charitable organizations.

The legatees and devisees of Dr. Dillard received one-half of the residuum of the Mundy estate and the devisees and legatees of Johnson received the other half as provided for in the contract of March 25, 1930.

Mrs. Mundy made no provision in her will for her brother, John E. Johnson, who was her only heir-at-law. Her will was never attacked and the statutory period for an attack had expired before the present application for relief was heard, therefore her will is unassailable and is established as her last will and testament.

These facts must be kept in mind: Mrs. Mundy died on March 2, 1930. Her will was probated March 7, 1930. The executors qualified, one on March 7th and the other on March 13, 1930. The contract between Dr. Dillard and John E. Johnson was executed on March 25, 1930, and on April 9, 1930, the executors delivered to Dr. Dillard all of the tangible personal property. Both Dr. Dillard and John E. Johnson died within one year after the death of Mrs. Mundy.

The pertinent sections of the Tax Code of Virginia, prior to the amendment of 1932 (laws 1932, ch. 225), are numbers 98 and 99. The first paragraph of section 98 (Code 1930, Appendix, p. 2153) defines the property upon which an inheritance tax may be imposed. It reads as follows:

"All property within the jurisdiction of this Common-

wealth, real, personal and mixed, and any interest therein, whether belonging to residents of this Commonwealth or not, which shall pass by will, or by the laws regulating descents and distributions, or grant or gift (except in case of a bona fide purchase for full consideration in money or money's worth) made or intended to take effect in possession or enjoyment after the death of the grantor, or grant or gift made in contemplation of death, and all grants or gifts made within one year next preceding the death of the decedent shall be deemed *prima facie* to have been made in contemplation of death, whether absolutely or in trust;"

The foregoing quotation will be referred to as the first paragraph of section 98.

■ Another paragraph in that section defines the method by which an estate must pass in order that it be subject to an inheritance tax. It is as follows:

"The tax aforesaid shall be determined upon the aggregate actual value of all property within the jurisdiction of the Commonwealth, as aforesaid, which shall pass from the decedent to any beneficiary, by will or by laws regulating descents and distributions, or by grant or gift made or intended to take effect in possession or enjoyment after death of the grantor or by grant or gift made in contemplation of death, or by any number or all of such methods of transmission;"

The foregoing quotation will be referred to as the second paragraph of section 98.

■ Still another paragraph of the same section prohibits more than one tax on the same property under certain circumstances. This paragraph reads as follows:

"Where any beneficiary has died or may hereafter die within one year after the death of the decedent and before receiving his or her share of the estate to which he or she is entitled, and taxes on said share have not been assessed and paid, then such share shall be taxed only once and the tax shall be assessed on the property re-

ceived from such share by each beneficiary thereof as if there had been no intermediate beneficiary."

This quotation will be referred to as the third paragraph of section 98.

■ Section 99 of the Tax Code (Code 1930, Appendix, p. 2154), is also relevant and it reads as follows:

"The personal representative of such decedent shall withhold and pay the whole of said tax, except the tax on the transfer of such real estate belonging to the estate of the decedent as he is not authorized to sell or receive the rents and profits from, and the sureties on his official bond shall be bound for the payment thereof, and the part of the tax so paid by the personal representatives assessed to the several beneficiaries shall be charged against their respective shares in the distribution of the estate, *unless the will directs otherwise."* (Italics supplied.)

The third paragraph quoted of section 98 is invoked by the surviving executor as authority for the refund of $17,928.73, which it claims was erroneously charged and collected by the State. The executor claims that under this paragraph the half of the residuum which finally passed under the contract of March 25, 1930, to the Johnson estate was not liable to an inheritance tax against the Mundy estate.

The sole question involved in this proceeding is whether or not the estate of Mrs. Mundy is liable for an inheritance tax upon the one-half of the residuum which ultimately went to the devisees and legatees of John E. Johnson in accordance with the terms of the contract of March 25, 1930, between Dr. Dillard and Johnson. The Department of Taxation assessed this half with an inheritance tax, which was paid, just as though Dr. Dillard were the ultimate beneficiary, although neither he nor his estate ever received this portion of Mrs. Mundy's estate.

The theory upon which the tax was assessed and collected on this half of the residuum is that under the quoted paragraphs one and two of section 98 this one-half was

taxable, for the reason that it passed by the will of Mrs. Mundy to Dr. Dillard and such "passing" (by will) is one of the means expressly defined and embraced in section 98.

On the other hand the executor contends that by virtue of the third paragraph, the tax on Johnson's half should not have been imposed, because the beneficiary, Dr. Dillard, died within a year from the death of Mrs. Mundy and before he received the share and before the tax had been assessed and paid; and further, that this paragraph prohibits more than one tax on this share, and that inasmuch as Dr. Dillard died within the year without receiving this half of the residuum and before the tax had been assessed and paid thereon, the tax should have been assessed against the devisees of the Johnson estate under said paragraph, which reads in part: "And the tax shall be assessed on the property received from such share by each beneficiary thereof as if there had been no intermediate beneficiary."

The first and second paragraphs clearly authorize the tax which has been imposed and collected and unless the evidence justifies the application of the third paragraph, the tax is valid and should be sustained. The trial court, in an able opinion, held that the third paragraph had no application here and sustained the tax.

By the will of Mrs. Mundy, any and all inheritance taxes assessed, are directed to be paid out of her estate. She expressly directed that they should not be charged to any of her beneficiaries.

The important question to be decided, and the one upon which the entire case of the executor is founded, is the applicability of the third paragraph of section 98. Before the executor is entitled to the refund which it claims it must bring the case within the terms of that paragraph.

As heretofore stated, Dr. Dillard was the sole beneficiary of the residuum of Mrs. Mundy's estate and Johnson was not remembered or mentioned in her will. She evidently intended that her brother should not receive

any part of her estate. However, under the terms of the contract between Dr. Dillard and Johnson, the latter's estate did receive one-half of the share which was bequeathed to Dr. Dillard.

"All property * * * which shall pass by will or by the laws regulating descents and distributions or grant or gift (except in case of a bona fide purchase for full consideration in money or money's worth) made or intended to take effect in possession or enjoyment after the death of the grantor." * * * If the "methods of transmission" as defined in the statute are used to "pass" the property they determine whether the property is taxable or not. The methods are "which shall pass from the decedent to any beneficiary by will or by laws regulating descents and distributions, or by grant or gift made or intended to take effect in possession or enjoyment after death of the grantor or by grant or gift made in contemplation of death, or by any number or all of such methods of transmission." It is perfectly plain that the residuum of Mrs. Mundy's estate passed to Dr. Dillard in one of the statutory methods of transmission—that is, by will. In the absence of the contract of March 25, 1930, between Dr. Dillard and Johnson, the validity or legality of the imposition of the tax could not have been seriously questioned.

Except where the circumstances enumerated under the third paragraph of section 98 exist, the tax is effective as of the date of the death of the testator. If those circumstances did not exist then the tax upon the residuum became effective at the death of Mrs. Mundy and Dr. Dillard being the beneficiary of the residuum the tax would have been proper.

That portion of the estate of Mrs. Mundy which was received by the devisees of Johnson, was received by them under the contract of March 5, 1930, and not by virtue of Mrs. Mundy's will. They were not beneficiaries under her will and their right to participate in her estate is based solely upon this contract. This being true, that

portion of the estate received by these devisees did not pass to them by any of the "methods of transmission" prescribed in the statute. There has been, in reality and in contemplation of the statute "only one taxable passage of the property—the passage from Mrs. Mundy to Dr. Dillard." The other passage of the property from Dr. Dillard to Johnson is excepted from the operation of the statute in this language: "Except in case of a bona fide purchase for full consideration in money or money's worth." Property that does not pass by the statutory means of transmission, but passes by contract does not come within the operation of section 98, and is not taxable.

██ The prohibition against taxing property more than once applies only where there exists an unbroken chain of passages by one or more or all of the taxable methods prescribed in the statute. Passage by contract is not one of those methods; therefore the prohibition has no application to such a passage.

If the legislature had intended that there should be imposed only one tax where property which passed from the estate of a decendent to a beneficiary who disposed of the same *by contract* it would also have written that method of transmission into the statute.

The result is that the whole residuum is taxable, the same having passed by will to Dr. Dillard. The one-half of the residuum, which passed by contract from Dr. Dillard to Johnson, is not taxable. To the former method of transmission the statute applies but to the latter it has no application.

██ The word "beneficiary" as used in the statute means a person to whom property has passed by will, or in some one of the other methods prescribed in the statute. It does not mean one who has received property by some other method. According to the statute, Dr. Dillard is the beneficiary who has died. Johnson was not such a beneficiary. It is not Johnson's death which gave rise to the application of the statute, but it was Dr. Dillard's death which brought the statute into operation. When

Dr. Dillard died, leaving by will the property to his legatees, the tax was not imposed first upon the passage to him and again upon the passage from him to his legatees. It was imposed upon the passage from Mrs. Mundy's estate to his legatees, because of the application of the third clause of section 98. But the same is not true of the Johnson interest. It first passed to Dr. Dillard by will, then from him to Johnson by contract and from Johnson to his legatees by will. Therefore under the first and second paragraphs of section 98 the passage of this interest from Mrs. Mundy to Dr. Dillard was taxable, but its passage from Dr. Dillard to Johnson was not.

In speaking of the "intermediate beneficiary" referred to in the third paragraph, the Hon. Jos. A. Glasgow, judge of the trial court said:

"To bring the case under consideration within the terms of this paragraph, Dr. John W. Dillard must be taken to be an intermediate beneficiary and John E. Johnson a remote beneficiary of Mrs. Mundy's will.

"This would seem clear, for the statute speaks of an 'intermediate beneficiary.' In order that there could be an 'intermediate beneficiary' there must be a remote beneficiary of Mrs. Mundy, and the remote beneficiary to be assessed under the inheritance tax law must take by will or the laws regulating descents and distributions or by grant or gift made or intended to take effect in possession or enjoyment after death of the grantor. * * *

"The party claiming to be not an 'intermediate beneficiary' but a remote beneficiary must take in such a way as to be assessable under the inheritance tax law, or otherwise no inheritance tax can be assessed against him. If the party takes by gift *inter vivos,* not in contemplation of death, if the party takes as a creditor, if the party takes by contract, or by virtue thereof upon a valuable consideration, then he is not such a remote beneficiary as is mentioned in the statute, and there is no 'intermediate beneficiary,' but the party claimed to be an 'intermediate

beneficiary is in fact the immediate and final beneficiary. * * *

"The use of the words 'intermediate beneficiary' implies and contemplates that there is in existence a remote beneficiary who is such a beneficiary as takes his benefit by inheritance, for this law was passed only for the purpose of taxing the privilege of taking by inheritance as outlined in the statute itself.

"Under this statute the case may arise where the estate of the decedent has not been distributed and it is certainly subject to the inheritance tax, and the immediate beneficiary dies within a year, and his estate passes to his immediate beneficiary—both beneficiaries are such beneficiaries as the statute is made to apply to. The last beneficiary is a remote beneficiary (such beneficiary as the statute is considering) and the first beneficiary, is, as far as the last is concerned, an 'intermediate beneficiary.' But if the last beneficiary took by gift *inter vivos* or as a creditor or in settlement of a contract made upon a valuable consideration or if it came to him in any other way than by inheritance transmitted as defined by the statute, he is not a beneficiary such as is mentioned in this statute, for we are here undertaking to assess a tax upon the privilege of taking an inheritance transmitted as defined by the statute, and we are not interested in and cannot assess a tax upon any other kind of beneficiary.

"The purpose of this provision in the statute was to meet the case where A dies and leaves all of his property to B. B dies within a year, before receiving this property and leaves all his property to C; then but for this statute, B would have assessed against him an inheritance tax and C an inheritance tax on the same property, two inheritance taxes on the same estate which went straight to C, and while there were two wills, there was in effect but one transmission, B never having received the estate.

"The provision was not meant to meet the case when A leaves to B his estate and B disposes of it, transmitting it by some method other than the methods set out in the

statute, disposing of it by assignment or contract for his own benefit. There would be no two inheritance taxes assessed on the same estate in the last instance, and no reason and demand for relief such as was in the other case, and * * * the parties who took from B * * * are not remote beneficiaries, with B as an 'intermediate beneficiary' as referred to in the statute. They are not inheritance tax beneficiaries, they are not such beneficiaries as the statute is talking about. They do not take an estate by transmission in any one of the methods named in the statute upon which an inheritance tax may be assessed." * * *

We are in accord with the construction of the statute adopted by Judge Glasgow.

The question here involved has never been passed upon by this court. Cases from other jurisdictions are of little benefit to us because the statutes of those jurisdictions are different from ours. Counsel for the executor relies upon the case of *In re Thorson's Estate,* 150 Minn. 464, 185 N. W. 508, 509. There it was held that, where legatees under a will, being dissatisfied with their legacies, compromise their differences and some get more and some less than what was given by the will, they will be taxed upon the basis of what they actually received and not upon what they were given by the will. The court said: "Under the rule adopted the tax falls upon those who receive the property, and in proportion as it comes to them. That seems just, it seems fair, is consistent with every legitimate claim of the State, and places the burden of the tax where it rightly belongs."

In that case the controversy arose between those who were beneficiaries under the will, and they were, by reason of the passing of the property to them, already subject to an inheritance tax, which was finally fixed upon the actual amount they received and not upon the amount given them by the will.

The cases relied upon to sustain the rule announced in the *In re Thorson's Estate, supra,* are *Hawley's Estate,*

214 Pa. 525, 63 Atl. 1021, 6 Ann. Cas. 572; *Pepper's Estate,* 159 Pa. 508, 28 Atl. 353; *People* v. *Rice,* 40 Colo. 508, 91 Pac. 33; *Taylor* v. *State,* 40 Ga. App. 295, 149 S. E. 321. After an examination of them, they afford little aid in the determination of the case at bar.

Numerous other cases hold that when the will is admitted to probate, the tax must be paid in accordance with its provisions regardless of any subsequent compromise agreement between the heirs or devisees, for the reason that it is by virtue of such compromise agreement that they receive the estate and not by virtue of the will. Some of those cases are *Cochran's Ex'r* v. *Commonwealth of Kentucky,* 241 Ky. 656, 44 S. W. (2d) 603, 78 A. L. R. 710; *MacKenzie* v. *Wright,* 31 Ariz. 272, 252 Pac. 521; *In re Graves' Estate,* 242 Ill. 212, 89 N. E. 978; *People* v. *Kaiser,* 306 Ill. 313, 137 N. E. 826; *People* v. *Upson,* 338 Ill. 145, 170 N. E. 276; *Baxter* v. *Stevens,* 209 Mass. 459, 95 N. E. 854.

We are of the opinion that the order of the trial court refusing the relief prayed for is correct, and that it should be affirmed.

*Affirmed.*