**MISTAK et, Plaintiff, v. TRIMBUR, County Auditor et al., Defendants.**

Common Pleas Court, Trumbull County.

No. 62232.   Decided February 11, 1953.

524

Sieman & Sieman, David Sieman, Warren, on behalf of plaintiffs.

D. J. Del Bene, Warren, on behalf of defendant Shultz.

J. D. Campbell, Warren, on behalf of William C. Trimbur, Auditor.

## OPINION

By BIRRELL, J.

Plaintiffs bring this action to enjoin the Trumbull County

Auditor and the Trumbull County Treasurer, respectively, from placing on the Tax Duplicate, and from collecting the assessment of the cost of a partition fence constructed by order of the Gustavus Township Trustees. Paul E. Schultz had requested the Trustees to cause his neighbor to construct the neighbor's share of the partition fence between their farms, and had advised the Trustees that Andrew and Mary Mistak were the owners. These parties were only purchasing the farm from Lafayette and Bertie Burnett on Land Contract. The Trustees gave no notice to the Burnetts but went forward with the assigning of portions of the fence and ultimately let a contract for the construction of the Mistak portion to Schultz himself on his bid of $541.50. It is the collection of the amount of this bid, plus the Trustees' costs which the Mistaks seek to enjoin.

The power of the Trustees of Gustavus Township to cause the assessment of the expense of constructing a partition fence depends entirely upon their strict compliance with the Statutes of the State of Ohio. **Sec. 5910 GC** provides that the Trustees "after not less than ten days written notice to the adjoining land owners" etc., may proceed with the viewing and assigning of portions of a partition fence to each adjoining land owner for construction and repair. It will be noticed that the present Statute requires "written notice to all adjoining land owners."

The older Statute which permitted the interpretation placed thereon in the case of **Moore v. Given, 39 Oh St 661,** was amended some years after the decision in that case to require "written notice to all land owners." This accounts for the opinion of the Attorney General reported at 1928 Opinions p. 1766 No. 2366, although his Opinion does not indicate the date or reference to the Amendment of this Statute (95 v 53, 97 v 139).

The Statute as interpreted in Moore v. Given required notice "to all parties who may have an interest in the title or possession of said premises and the repair or construction of said fence." This former Statute describes the present Plaintiffs perfectly for they surely are parties "who have an interest in the title or possession of (the) premises and, the repair or construction of the fence." But the present Statute requires "written notice to all adjoining land owners," without qualifying whether or not they have an interest in the title or possession and in the repair or construction of the fence. The present Plaintiffs are at most "equitable" owners, and their interest in the title or possession of the property and in the repair or construction of the fence has no place in their qualifications to receive the notice required by this Statute.

Where the Legislature changes a Statute it is presumed that it had some reason for the change, and meant to use the amending words in their normal sense and meaning. By leaving out the phrases describing the person to whom notice must be given as being a person who may have "an interest in the title * * * and the * * * construction of the fence," and substituting therefor solely the term "owner," it may be naturally assumed that it meant that persons with such qualifications were not required to receive the notice. Their use of the term "all owners" in the present Statute would also imply that where there were more than one person who qualified as an owner of the land, the notices must be given to "all owners" both legal and equitable. Considering the history of the former Statute which the present section amended, the use of the adjective "all" would indicate a positive requirement in order that the notices be properly served.

Likewise at the time when this old Statute was amended to its present form (97 v 139), a new section was added which under the numbering of the old Revised Statutes was designated as No. 4243-b (97 v 140) entitled "Meaning of term 'owner.'" This section by further revision (98 v 149) has become our present §5919 GC and reads as follows:

**Sec. 5919 GC.** Meaning of term "owner." In this chapter, the term "owner" shall apply to the owner of such land in fee simple, of estate for life or rights of way * * *, but these proceedings shall not bind the owners unless notified as provided herein.

In this case no notice was given to the "owner of such land in fee simple," Lafayette Burnett and Bertie Burnett. At most it is claimed that notice was given to only the equitable owners, Andrew Mistak and Mary Mistak. Since §5919 GC specifically provides "these proceedings shall not bind the owner unless notified as provided herein," of course the owners, Lafayette Burnett and Bertie Burnett, are not bound in any manner by the action of the Township Trustees. The mere fact that Lafayette Burnett may have been present and observed the proceedings, or that he later signed some paper admitting that he "did not object to said fence then or at any other time to the assessment," has no effect upon the validity of the action of the Township Trustees against him or as against the Plaintiffs herein, Andrew and Mary Mistak.

Likewise by reason of the specific definition of the term "owner" against whom assessments only may be levied. the equitable owners, Andrew Mistak and Mary Mistak are not affected by the proceedings of the Trustees even though they received the written notice of the proceedings. It would be

impossible for the County Auditor to place assessments upon land not in the names of the Plaintiffs.

Consequently the Plaintiffs in this case should be entitled to equitable relief and the Defendants restrained from placing an assessment upon the property described in the petition.

The Court however entertains the belief that adjoining farmers should both build and keep their fences in repair (§5908 GC). Having at earlier times chased cows which escaped from enclosures by reason of defective fences, the Court is far from sympathetic with an adjoining owner of property who fails to keep his fences in repair. There is an old maxim of the law especially applicable to equity cases to the effect that "he who seeks equity must do equity." In this case the Plaintiffs having invoked the equitable powers of the Court should be required to "do equity."

In the view of the Court the Plaintiff should pay the cost of construction of the fence which was constructed by Paul Schultz, the adjoining land owner, for whose benefit this Statute was enacted. The Statute ought to be obeyed as a condition to the decree and judgment of this Court in this case.

The cost of construction of this 541 feet of fence includes the following items according to the testimony in this case:

| | |
|---|---|
| Cost of wire, 2 rolls @ $27.00 | $54.00 |
| Cost of posts, 34 posts @ .85c | 28.90 |
| Cost of common labor 4 days @ $10.00 ($1.25 per hr.) | 40.00 |
| Cost of skilled labor, including management, planning, tools and over-sight of work | 50.00 |
| Total | $172.90 |

With regard to the fees of the Township Trustees, it is impossible under the Statutes for them to collect their fees from the Plaintiffs. But the Trustees are not to be blamed for their failure to serve the written notice upon the "fee-simple" owners of the property. The application to the Trustees for the view of the partition fence was made by Paul E. Schultz. He specifically advised them that "Andrew Mistak and Mary Mistak are the owners of (the) adjoining lands" * * * and "the partition fence * * * which he ought to build and repair." There is nothing in the Statute that requires the Trustees to search the records to determine who is the owner of adjoining lands. In this instance they had every reason to suppose that the man who requested them to make the view and assign portions of the fence to the adjoining owners knew what he was requesting. The fact,

therefore that the written notice was not served 'upon the proper party was not their fault. Whatever work they did in their attempt to comply with the wishes of Paul Schultz was done solely at his specific request. They are, therefore entitled to collect their fees from the person who caused them to incur such expense. Neither can Paul Schultz be reimbursed for his failure to collect the amount of his bid of $541.50 for construction of this fence. It is granted that he had the right to bid whatever amount he was willing to bid upon this construction. Any other person, likewise had a right to bid upon the contract and offer to construct the fence for whatever amount that person was willing to undertake such project. Perhaps to the people of the vicinity who knew of the opportunity to bid upon this contract, it was worth this amount of money to build this fence at that particular time. With the bid, and with the acceptance thereof by the Trustees, the Court finds no fault, but cannot require Plaintiff to pay.

However, the Court is interested in the equitable cost of construction of this fence. The measure of this value is believed to be the actual cost of the items required and used in the construction, together with the labor, both skilled and unskilled required therein, which as above indicated amounts to $172.90.

An Entry may be drawn in accordance with the views expressed herein, to the effect that the RESTRAINING ORDER MAY BE GRANTED AND MADE PERMANENT upon payment by the Plaintiff to Paul E. Schultz of the amount of $172.90. The cost herein may be divided equally between the Plaintiff and Defendant Paul E. Schultz.