Smith, Estate of, In re.

Probate Court, Hamilton County.

No. 231379.   Decided December 12, 1962.

450

*Mr. Mark McElroy*, attorney general, for Tax Commissioner.

*Mr. Booth Shepard*, for Floyd H. Kelly, Administrator of the Estate of Robert Z. Smith, Deceased.

DAVIES, J.  Floyd H. Kelly, as administrator of the estate of Robert Z. Smith, deceased, has filed an application, under the provisions of Section 5731.08, Revised Code, contending that he is entitled to a refund of a portion of the Ohio inheritance taxes paid on successions to property from the decedent's estate because part of said successions included 600 share of common, no par, stock of Texaco Canada, Ltd., of Canada upon which successions the Dominion of Canada has assessed, and the applicant has paid, a Canadian *estate tax.*

Section 5731.08, Revised Code, which became effective October 1, 1953 (formerly Section 5333, General Code), provides as follows:

"After the probate court has determined, or when it is determining, the tax in the manner provided in Sections 5731.01 to 5731.56, inclusive, Revised Code, on the succession to property from a resident of this state, if it appears that an inheritance or succession tax has been assessed and paid in other (sic.  Section 5333, General Code, reads "another") state or country on the succession to any part of such property, the court shall allow the successor by whom such tax has been paid a credit of the amount paid by him or in his behalf in such other state or country, this credit to be applied on the tax assessed under such sections.  The amount of credit allowed shall not exceed the amount assessed or paid in this state on

the succession of such successor in the property so subject to tax elsewhere.''

This court is now asked to decide if the credit referred to in said Section 5731.08, Revised Code, should be allowed only when *an inheritance or succession tax* has been assessed and paid in another state or country or if the credit should also be allowed a successor by whom *an estate tax* has been paid in another state or country.

The applicant contends that, based upon equitable principles, it is just that the credit referred to in Section 5731.08, Revised Code, be allowed because the legislature must have intended to allow credit for a tax, whether it be an inheritance, a succession, or an estate tax paid in another country (or state) and that it is illogical to eliminate the credit on the Canadian estate tax merely because of the language used by the legislature in providing that a credit be allowed on *an inheritance or succession tax* assessed and paid in another state or country. The Ohio Department of Taxation, on the other hand, contends that there is a very real difference between *an inheritance or succession tax* and *an estate tax* and that the legislature, therefore, must have intended to restrict the credit referred to in Section 5731.08, Revised Code, only to those cases in which an inheritance or succession tax has been assessed and paid in another state or country.

Under the heading of ''Inheritance Tax'' (Sections 5731.01-5731.56, Revised Code), Ohio levies both a tax on successions which is an inheritance tax and an estate tax (Section 5731.13, Revised Code), imposed upon the net estates of resident decedents to absorb the 80% credit against the basic federal estate tax allowed by federal law.

In defining the general nature of an inheritance tax and an estate tax, the courts have evolved certain distinctions between the two taxes. An estate tax is a tax upon the transmission of propery by a deceased person. The tax is a charge upon the decedent's whole estate, regardless of the manner in which it is distributed. It is not a tax upon what each beneficiary receives, but a tax upon what is left by the decedent. On the other hand, an inheritance tax is said to be an excise on the privilege of taking property by will or by inheritance or by

succession in any other form upon the death of the owner. The statute imposing an inheritance tax does not look to the estate or interest which was ended by death, as would be done in the case of an estate tax, but to the interests which are newly created by death. Under an inheritance tax it is necessary to determine the relationship of the heir or beneficiary to the decedent and the amount he is entitled to take. There is a tax on the beneficial interest of such beneficiary or heir. 29 Ohio Jurisprudence (2d), 7, 28 American Jurisprudence, 8.

The Ohio succession tax is not a tax on the estate of a decedent, but is a tax upon the succession or the right and privilege of an heir or beneficiary to receive property from the decedent, "succession" being defined as the passing of property in possession or enjoyment, present or future. *In re: Estate of Daniel*, 159 Ohio St., 109; *State* v. *Gilbert*, 70 Ohio St., 229, 71 N. E., 636; *Dept. of Taxation* v. *Weber*, 94 Ohio App., 511, 113 N. E. (2d), 141.

Courts generally distinguish inheritance or succession taxes from estate taxes. *In re: Bass' Estate*, 200 Okl., 14, 190 P. (2d), 800; *In re: Hoffmann's Estate*, 399 Pa., 96, 160 A. (2d), 237; *In re: Hyde's Estate*, 92 Cal. App. (2d), 6, 206 P. (2d), 420; *Turner* v. *Cole*, 118 N. J. Eq., 497, 179 A., 113; *In re: Ogden's Estate*, 209 Wisc., 162, 244 N. W., 571; *State Tax Comm.* v. *Backman*, 88 Utah, 424, 55 P. (2d), 171; *Gearhart's ex'r.* v. *Howard*, 30 Ky., 709, 196 S. W. (2d), 113; *Seattle-First Nat. Bk.* v. *Macomber*, 302 Wash. (2d), 696, 203 P. (2d), 1078; *In re: Hamlin*, 226 N. Y., 407, 124 N. E., 4; *In re: Rosing's Estate*, 337 Mo., 544, 85 S. W. (2d), 495; *Baltimore* v. *Bouse*, 181 Md., 351, 29 A. (2d), 906; *People* v. *Upson*, 338 Ill., 145, 170 N. E., 276; *In re: Meinert's Estate*, 24 Iowa, 355, 213 N. W., 938; *State* v. *Haley*, 94 N. H., 69, 46 A. (2d), 533; *In re: Clark's Estate*, 106 Vt., 217, 136 A., 389; *In re: Jahn's Estate*, 65 S. D., 124, 271 N. W., 903; *In re: Perry's Estate*, 121 Mont., 280, 192 P. (2d), 532; *In re: Rudge's Estate*, 114 Neb., 335, 207 N. W., 520; *Hagood* v. *Doughton*, 195 N. C., 811, 143 S. E., 841; *State, ex rel. Foot,* v. *Bazille*, 97 Minn., 11, 106 N. W., 93; *MacDonald* v. *Stubbs*, 142 Me., 235, 49 A. (2d), 765; *In re: Falling's Estate*, 144 Or., 127, 24 P. (2d), 1; *Russell* v. *Cogswell*, 151 Kan., 14, 98 P. (2d), 179; *Foreman* v. *Fontenot*, 131 La., 925, 60 So., 618;

*Central Trust Co.* v. *James,* 120 W. Va., 611, 199 S. E., 881; *State* v. *Dunlap,* 28 Idaho, 784, 156 P., 1141; *Enochs* v. *State,* 133 Miss., 107, 97 So., 534; *Hazard* v. *Bliss,* 43 R. I., 431, 113 A., 469.

181 pages have been devoted by the editors of Ohio Jurisprudence, 50 Ohio Jurisprudence (2d) (pages 129-310), to a consideration of the subject of the construction and interpretation of statutes and hundreds of cases bearing on this subject are therein digested. Some of the basic principles established by the cases cited in said Volume 50 Ohio Jurisprudence (2d), are summarized as follows:

The primary and paramount rule in the interpretation or construction of statutes is to ascertain, declare, and give effect to the intention of the legislature if it is possible so to do. Section 169 (p. 139). In the construction of statutes it is the expressed legislative intent that is of importance. The law does not concern itself with the legislature's unexpressed intention, and no supposed intent of that body, aliunde the statute can supplant the words used. The question is not what the general assembly intended to enact but the meaning of that which it did enact. The criterion is not what the legislature intended, but their (its) intent in the use of the language employed. Section 171 (pgs. 142-144). In interpreting a statute, the attention of the courts is always directed to the terminology employed. The courts may not speculate apart from the words as to the probable intent of the legislature, and that no intent may be imputed to the legislature in the enactment of a law except that supported by the language of the law itself. It is to be assumed, or presumed, that the legislature used the language contained in a statute advisedly and intelligently, and expressed its intent by the use of the words found in the statute. That body should be held to mean what it has plainly expressed or to have intended to express its entire meaning by the import of the language used. Section 173 (pgs. 146-148). There is no occasion for resorting to rules of statutory interpretation if the language of the statute is plain and unambiguous and conveys a clear and definite meaning. An unambiguous statute is to be applied, not interpreted. Therefore, where the statute on its face is free from ambiguity, it is the established policy

of the courts to avoid giving it any other construction than that which its words demand. Indeed, it is not permissible to make an interpretation contrary to the plain and express words of the instrument, the meaning of which the General Assembly must be credited with understanding. On the contrary, the plain provisions of the statute must control. These principles largely account for the fact that, in the interpretation of statutes, frequent references may be found to the "clear," "definite," "distinct," "exact," "explicit," "express," "plain," "positive," "simple," "unambiguous," "unequivocal," or "unmistakable" language of the statute. It follows that where the statutory language itself clearly expresses the legislative intent the courts need look no further. If the intent is clearly expressed in the statute it may not be restricted, constricted, qualified, narrowed, enlarged, or abridged. A court cannot disregard the plain and obvious import of legislative intent that is clear and free from doubt. Section 175 (pgs. 150-152).

The purpose of all rules as to the construction of statutes is to discover the true intention of the law. Such rules are useful only in case of doubt, and are never to be used to create doubt but only to remove it. 82 C. J. S., 526. Presumptions as to the words, phrases, and provisions used in statutes include presumptions that the legislature understood their meaning and intended their use, and used them in their ordinary and common meaning, and that every word, sentence, or provisions has a purpose and is to be given some effect. 82 C. J. S., 549. The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute. 82 C. J. S., Sec. 321, p. 560. Where the language of a statute is plain and unambiguous there is no occasion for construction, and the statute must be given effect according to its plain and obvious meaning. 82 C. J. S., 577. Words and phrases having a technical meaning are construed according to their technical sense, unless it is apparent that a different meaning was intended by the legislature. 82 C. J. S., Sec. 330, p. 652.

In the case of *State, ex rel. Shaker Heights Public Library*, v. *Main, Clerk*, 83 Ohio App., 415, 38 Ohio Opinions, 464, 80 N. E. (2d), 261, the court was called upon to decide whether the

general assembly, by various enactments pertaining to libraries, intended that townships, municipal corporations, school districts, and counties might have overlapping libraries. It was argued that this could not have been the intention of the legislature because the services provided for were overlapping and that it was illogical that there should be such overlapping services. The court, however, concluded that the legislature meant what it said and that the law empowered a school district to create and maintain a public library within its district, notwithstanding the fact that public library service had been established previously within such district by another political subdivision. The court held that the primary purpose of the judiciary in the interpretation or construction of statutes is to give effect to the intention of the legislature, as gathered from the provisions enacted, by the application of well settled rules of interpretation; the ultimate function being to ascertain the legislative will. Where the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation.

In *Carter* v. *Youngstown*, 146 Ohio St., 203, 32 Ohio Opinions, 184, 65 N. E. (2d), 63, the court held that in the construction of statutes the purpose in every instance is to ascertain and give effect to the legislative intent, and it is well settled that none of the language employed therein should be disregarded, and that all of the terms used should be given their usual and ordinary meaning and signification except where the lawmaking body has indicated that the language is not so used.

Before finally deciding whether or not the legislature intended to restrict the credit referred to in Section 5731.08, Revised Code, to an inheritance or succession tax assessed and paid in another state or country, we should study the history of said section to ascertain if any clue of the legislature's intent can be found in earlier legislation bearing on the question involved in the instant case.

Effective June 6, 1919, the legislature provided in Section 5333, General Code, as follows: "If the succession to property which is not within this state is locally subject in another state or country to a tax of like character and amount to that hereby levied, and if such tax be actually paid or guaranteed or secured

in accordance with law in such other state or country, such succession shall not be subject to the tax hereby levied; if locally subject in any state or country to a tax of like character but of less amount than that hereby levied and such tax be actually paid or guaranteed or secured, as aforesaid, such succession shall be taxable under this subdivision of this chapter to the extent of the difference between the taxes actually paid, guaranteed or secured, and the amount for which such succession would otherwise be taxable hereunder.''

Effective February 17, 1920, the legislature amended Section 5333, General Code, to read as follows: ''If the succession to any property from a resident of this state is locally subject in another state or country to a tax of like character and amount to that hereby levied, and if such tax be actually paid or guaranteed or secured in accordance with law in such other state or country, such succession shall not be subject to the tax hereby levied; if locally subject in any state or country to a tax of like character but of less amount than that hereby levied and such tax be actually paid or guaranteed or secured, as aforesaid, such succession shall be taxable under this subdivision of this chapter to the extent of the difference between the taxes actually paid, guaranteed or secured, and the amount for which such succession would otherwise be taxable hereunder.''

Effective April 10, 1925, the legislature again amended Section 5333, General Code, to read as follows: ''After the court has determined, or when it is determining tax in the manner provided in this chapter on the succession to property from a resident of this state, if it is made to appear that an inheritance or succession tax has been assessed and paid in another state or country on the succession to any part of such property, the court shall allow the successor by whom such tax has been paid a credit of the amount so paid by him or in his behalf in such other state or country, this credit to be applied on the tax assessed under this chapter. Provided, however, that the amount of credit so allowed shall in no case exceed the amount assessed or paid in this state on the succession of such successor in the said property so subject to tax elsewhere.''

The language found in Section 5731.08, Revised Code, set forth in full above, which became effective on October 1, 1953,

is substantially the same as that found in Section 5333, General Code, which became effective on April 10, 1925. Even if the language found in Section 5731.08, Revised Code, was different than that found in Section 5333, General Code, the language in the recodified section, Section 5731.08, Revised Code, would be construed under the provisions of Section 1.24, Revised Code, as a restatement of and substituted for the existing statutory provisions of Section 5333, General Code, and not as a new enactment.

When there is a substantial doubt as to the meaning of the language used in the revision, the whole law is a valuable source of information, but when the meaning is plain the court cannot look to the statutes which have been revised, but may do so when necessary to construe doubtful language. In the enactment of a statute, we must suppose that the legislative mind is directed to what has been enacted. *State, ex rel. Pugh, Prosecuting Attorney,* v. *Brewster, Auditor,* 44 Ohio St., 249; *State, ex rel. Methodist Children's Home Association of Worthington,* v. *The Board of Education,* 105 Ohio St., 438, 138 N. E., 865.

Where the language in a revision is plain, there is no room for construction, and it is the duty of the courts to give the revision the effect required by the plain and ordinary signification of the words used, whatever may have been the language of the prior statute, or the construction placed upon it. *Heck* v. *State,* 44 Ohio St., 536, 9 N. E., 306. The legislature, we must assume, had a reasonable motive for changing a statute. *Cramer* v. *Trust Co.,* 72 Ohio St., 395, 74 N. E., 200.

The presumption is that every amendment of a statute is made to effect some purpose. That purpose may be either to add new provisions and conditions to the section as it then stands, or for the purpose of making plain the meaning and intent thereof. *Lytle et al.* v. *Baldinger et al.,* 84 Ohio St., 1, 95 N. E., 389; *Fyr-Fyter Co.* v. *Glander, Tax Commissioner,* 150 Ohio St., 118, 80 N. E. (2d), 776; *Regan* v. *Zeeb,* 28 Ohio St., 483; *State, ex rel. The Bedford Coal By-Products Co.,* v. *Fulton, Secretary of State,* 98 Ohio St., 350, 121 N. E., 697; *Malone* v. *Industrial Commission of Ohio,* 140 Ohio St., 292, 43 N. E. (2d), 266; *State, ex rel. Mittman et al.,* v. *The Board of County Commissioners,* 94 Ohio St., 296, 113 N. E., 831.

The court must look to the statute itself to determine legis-

lative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used. *Wachendorf* v. *Shaver*, 149 Ohio St., 231, 78 N. E. (2d), 370. As a general rule words of a statute in common use and other than the terms of art or science will be construed in their ordinary acceptation and significance and with the meaning commonly attributed to them. *State, ex rel. Stilson et al.,* v. *Ferguson*, 154 Ohio St., 139, 93 N. E. (2d), 688. When the legislature changes a statute it is presumed that it had some reason for the change, and meant to use the amending words in their normal sense and meaning. *Mistak et al.* v. *Trimbur et al.*, 67 Ohio Law Abs., 523.

In applying the principles which we have discussed to guide a court in determining a legislature's intent in enacting, or amending, a particular statute, we must first conclude that there is a well-recognized technical difference between an inheritance or succession tax and an estate tax. An inheritance or succession tax is a tax upon the succession or the right and privilege of an heir or beneficiary to receive property from a decedent, while an estate tax is a tax upon the estate of a decedent, regardless of the manner in which the estate is distributed. We must assume that the Ohio legislature in the original enactment of Section 5333, General Code (effective June 6, 1919), in the amendments of Section 5333, General Code, effective February 17, 1920 and April 10, 1925, and in the recodification of Section 5333, General Code, into Section 5731.08, Revised Code, effective October 1, 1953, knew the difference between an inheritance or succession tax and an estate tax. We also must presume that the amendments of Section 5333, General Code, were made to effect some purpose.

Section 5333, General Code, as enacted in 1919 and as amended in 1920 provided that if the succession to any property from a resident of Ohio was locally subject in another state or country to a tax of like character and amount to the Ohio inheritance

or succession tax there would be a certain Ohio tax credit for such other tax of like character paid.

Effective April 10, 1925, the legislature amended Section 5333, General Code, to provide that if it is made to appear that an inheritance or succession tax has been assessed and paid in another state or country the court shall allow the successor by whom such tax has been paid the credit referred to in that amended section. The legislature, effective April 10, 1925, decided that the credit would not be allowed on a *tax of like character and amount* paid in another state or country but upon an *inheritance or succession tax* paid in such other state or country.

Since Section 5731.08, Revised Code, provides that if it appears that an inheritance or succession tax has been assessed and paid in other (sic) state or country on the succession to any part of such property, the court shall allow the successor by whom such tax has been paid a credit of the amount paid by him in such other state or country, not to exceed the amount assessed or paid in Ohio on the succession, such credit is limited to an inheritance or succession tax and shall not be allowed when an estate tax has been assessed and paid in other (another) state or country on such succession.