No. 21,610.

W. R. BUCK, *Appellee,* v. THE BOARD OF COUNTY COMMISSION-
ERS OF THE COUNTY OF MIAMI et al., *Appellants.*

SYLLABUS BY THE COURT.

TAXATION—*Notes and Securities—"Business Situs" in Foreign State—
Nontaxable in Kansas.* A resident of this state, having sold a busi-
ness in Wyoming, placed the proceeds with an investment company in
Missouri with full power to invest in notes and mortgages, record, re-
lease, collect and reinvest, the securities being at all times in the pos-
session of the agency, the profits only being remitted to the principal.
*Held,* that such securities, being thus dealt with for a number of years,
acquired a business situs for the purposes of taxation where the agency
is located and are not taxable at the residence of the owner.

Appeal from Miami district court; JABEZ O. RANKIN, judge.
Opinion filed June 8, 1918. Affirmed.

*Karl V. Shawver,* county attorney, for the appellants.

*Alpheus Lane,* and *M. A. Lane,* both of Paola, for the ap-
pellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff, a resident of Miami county, brought
this suit to enjoin the assessment of certain notes and mort-
gages owned by him, but kept in Kansas City, Mo. The pro-
ceeds of a business sold by the plaintiff in Wyoming were for-
warded to the Maxwell Investment Company at Kansas City,
Mo., and later a power of attorney was executed, by the terms
of which the company was authorized—

"To engage for me in my behalf in the investment of all funds in its
hands or that may come into its hands belonging to me in loaning the
same on notes secured by first real estate mortgages in any state where
it is engaged in business or by purchasing notes secured by first real es-
tate mortgages, with full authority to take such notes and mortgages
and assign same to me and to keep and hold all such notes and mortgages
and to ask, demand, sue for, collect and receipt for all moneys due to me
on any note now or hereafter so held with full power and authority to re-
lease any and all mortgages of record now or hereafter held when the
same shall have been paid, and to reinvest in its discretion any and all
collections in manner above designated, and I authorize and empower my
agent and attorney, The Maxwell Investment Company, to hold and keep

for my use all of the securities that may be taken for the reinvestment of funds as paid in."

The terms of this authority were followed, notes and mortgages were purchased, some of the mortgages being on Oklahoma lands, some in Texas, and some in Arkansas, but probably none in Kansas. The general course of business was for the Maxwell Investment Company to select certain mortgages written to itself, charge them up to the plaintiff's account, place them in a package in a box in a safety deposit vault, the notes never going out of the office of the investment company. When they were paid off the company released them, the proceeds being reinvested for the plaintiff, the entire business being transacted by the company. It also appears that, in some way satisfactory to the comptroller, these securities were regarded as assessed to the Maxwell Investment Company, as a part of its capital and surplus.

The trial court found that the securities attempted to be assessed in Miami county had a business situs in the state of Missouri, and were not properly assessable in Kansas.

The defendants appeal, and contend that the rule should apply that personal property follows the domicile of the owner. It is conceded that this is the general rule in regard to intangible personal property, the situs of which has not been fixed by the legislature, but the plaintiff contends that the facts in this case present an exception and bring the securities in controversy under the rule that such property is assessable elsewhere when it has there acquired a business situs. Ordinary tangible personal property may easily be located and used in another state so as to effect and localize a business situs. Notes and mortgages are sufficiently practical and tangible to become the subject of exclusively local business use, and that such property may acquire such situs is recognized by the courts and by the state tax commission. Counsel for the plaintiff quote a letter sent out by the commission under the date of December, 1915, containing the following language:

"Intangibles, however, may acquire what is known as a business situs. In other words, if a nonresident of Kansas which sent into the state moneys for investment, and these moneys were administered by an agent, or an attorney in fact, who exercised all the powers of ownership, such as making the investments upon his own election, collections of interest and principal, satisfaction of mortgages of record, and all such powers

which the owner has the right to exercise, merely sending to the real owner in another state income from time to time, then the Commission has held that such property has a business situs in the state, and is taxable in the state. Contrariwise, property of the kind sent to another State under exactly similar conditions would be nontaxable in Kansas, although the owner lived here, but the business must be transacted in a *bona fide* manner."

Counsel also quote from the revised instructions sent out by the tax commission the following:

"An investment business may be so conducted as to give rise to a right of taxation of the property involved in the state where the business is transacted. Such situs is commonly called a 'business situs.' This means simply that if a person in one state sends into another state moneys to be handled by an agent or an attorney in fact, who has and exercises all the powers of investment which the owner has and would exercise were he in the state where the business is being transacted— that is to say, who invests the money, takes and records mortgages, collects the notes when due, releases record obligations and reinvests money, realized from the collection of such obligations. and handles the business exactly as the owner would handle it, transmitting to the owner occasionally amounts of income as agreed upon—then such property would have a business situs in the state where the business is being transacted and would be there taxable."

·In *Johnson County v. Hewitt*, 76 Kan. 816, 93 Pac. 181, it was said:

"Notes, mortgages, tax-sale certificates and the like might be brought into the state for something more than a temporary purpose, be devoted to some business use here and thus become incorporated with the property of this state for revenue purposes. Such situs has aptly been termed a 'business situs.'" ·(p. 822.)

Also,

"It is not necessary to determine precisely what facts will be sufficient in every case to establish an independent business situs for notes and mortgages, but generally the element of separation from the domicile of the owner and fairly permanent attachment to some foreign locality should appear, together with some business use of them, or some power of managing, controlling or dealing with them in a business way." (p. 823.)

The same rule is found announced in many decisions.

"If we look to the decisions of other states, we find the frequent ruling that when an indebtedness has taken a concrete form and become evidenced by note, bill, mortgage or other written instrument, and that written instrument evidencing the indebtedness is left within the state in the hands of an agent of the nonresident owner, to be by him used for the

purposes of collection and deposit or reinvestment within the state, its taxable situs is in the state." (*New Orleans v. Stempel*, 175 U. S. 309, 317.)

"A credit which cannot be regarded as situated in a place merely because the debtor resides there, must usually be considered as having its situs where it is owned, at the domicile of the creditor. The creditor, however, may give it a business situs elsewhere; as where he places it in the hands of an agent for collection or renewal with a view of reloaning the money and keeping it invested as a permanent business." (*Bristol v. Washington County*, 177 U. S. 133, 141.)

(See, also, *Board of Assessors v. Comptoir National*, 191 U. S. 388; *Union Transit Co. v. Kentucky*, 199 U. S. 194; *Buck v. Beach*, 206 U. S. 392; *Buck et al., Trustees, v. Miller, Treasurer of Tippecanoe County*, 147 Ind. 586; *Golgart v. The People, ex rel.*, 106 Ill. 25; *Metzenbaugh v. The People*, 194 Ill. 108; *People, ex rel. Jefferson, v. Smith et al.*, 88 N. Y. 576; *Catlin v. Hull*, 21 Vt. 152; 37 Cyc. 803; 27 A. & E. Encycl. of L., 2d ed., 656.)

Under these authorities, it is beyond question that if the plaintiff lived in Kansas City, Mo., and dealt with the fund in question in the same way through an agency at Paola his securities would be taxable here. The controlling principle is no less plain because the geography of the situation is reversed. The precise case before us (and our decision goes no further) is one in which the plaintiff, a resident of this state, took the proceeds of a business owned by him in another state and placed them as a sort of revolving fund with an agency in a third state with full power to invest in notes and mortgages, record, release, collect and reinvest, the securities being at all times in the possession of the agency, the profits only being remitted to the plaintiff. This course of dealing for a number of years has given such securities a business situs for the purposes of taxation in the state where the agency is located.

Counsel for the defendants inquires whether, on the facts here shown,

"a resident of Kansas can escape his obligations to the municipal bodies . . . or can by this method a citizen of this state shirk his obligations as a taxpayer, and thereby impose a greater obligation on the other citizens living around him, an unjust and an unequal obligation."

In *Fisher v. Comm'rs of Rush Co.*, 19 Kan. 414, Chief Justice Horton said:

"It may by some be considered unjust and unequal that a citizen of this state should be allowed to possess notes and debts in another state secured by mortgages, and not pay taxes upon them here. . . . Taxation and protection are correlative terms. Protection to that portion of property not taken or absorbed by the tax, is the consideration or compensation for all legitimate taxation. Without this protection, or some benefit to be returned therefor, taxation would be but another name for spoliation, or confiscation." (p. 416).

It was also said that—

"The power of taxation, however vast in its character, and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state." (p. 416.)

In deciding *Kingman Co. v. Leonard*, 57 Kan. 531, 46 Pac. 960, it was declared that—

"The ground on which all taxation is justified is, that it is a burden necessarily imposed by the sovereignty in order to enable it to perform its duty in protecting persons and property. . . . We think it now quite well settled that choses in action belonging to a nonresident, in the hands of a managing agent within the state, are taxable." (p. 534.)

In *Mecartney v. Caskey*, 66 Kan. 412, 71 Pac. 832, in speaking of another kind of property, it was said:

"An owner may separate his certificates from himself, attach them to some locality apart from his residence, and employ them there in such manner as to effect a permanent submission of them to the latter jurisdiction." (p. 414.)

The result reached by the trial court was in line with these decisions and expressions, and the judgment is affirmed.