No. 26,039.

George Honest, *Appellant*, v. (Walter Gann, as Sheriff) Rollie David, as County Treasurer of Logan County, *Appellee*.

SYLLABUS BY THE COURT.

Taxation—*Place of Taxation—Notes of Nonresident in Hands of Agent.* Promissory notes of a nonresident held in the state for more than a temporary purpose may be subject to taxation in this state, and it is held that the finding of the trial court that the notes of the nonresident plaintiff had acquired a business situs, and were subject to taxation in Kansas is sustained by sufficient evidence.

Appeal from Logan district court; Jacob C. Ruppenthal, judge. Opinion filed March 6, 1926. Affirmed.

*J. H. Jensen,* of Oakley, and *J. A. Fleming,* of Topeka, for the appellant.
*Guy L. Hursh,* of Topeka, and *B. W. Brooke,* of Winona, for the appellee.

The opinion of the court was delivered by

Johnston, C. J.:   In this action George Honest sought to enjoin the county treasurer from enforcing the collection of a tax assessed upon promissory notes which had been owned by him, and from the judgment denying the injunction he appeals.

It appears that Honest had lived many years near Oakley, Kan., and had kept an account in the First National Bank of Oakley, of which V. Jaggar was the cashier. From time to time he had purchased notes through Jaggar, the cashier, and had many business transactions with him and the bank. Jaggar had made a loan of $25,000 to Nolind, the amount being evidenced by notes of varying amounts secured by a mortgage on a large tract of land. Having a surplus of money in the bank Honest purchased two of these notes in December, 1921, one for $5,000 and another for $2,000, and these were transferred to him by Jaggar, but were kept in a pouch with his other papers in the bank. Shortly before that time he had removed to New Mexico where he has since resided, but has continued to keep his account in the bank, where the notes were kept. Jaggar, who made the investment for him, collected the interest on the notes, took renewals of the originals when they matured, and did so without consultation with Honest, and when payment was finally made the proceeds were deposited in the bank to the credit

Evidence, 22 C. J. p. 140 n. 54, 55.  Taxation, 37 Cyc. pp. 773 n. 47, 803 n. 53, 990 n. 2, 1276 n. 85; L. R. A. 1915C, 903; 26 R. C. L. 286.

of Honest and deposit slips sent to him in New Mexico. On the evidence produced, the court made findings of fact. Those relating to the purchase and handling of the notes, and the course of business between Honest and Jaggar are as follows:

"About December, 1921, plaintiff bought two notes aggregating $7,000 through the First National Bank of Oakley and V. Jaggar, its cashier. These notes were later assessed to plaintiff in Logan county as of date March 1, 1922. Taxes were not paid thereon. Tax warrant issued for such taxes, and is in the hands of defendant sheriff who will levy upon and make the same from plaintiff's property unless enjoined from so doing by this court.

"Since plaintiff's residence in New Mexico, he has continued to do business with and through the First National Bank of Oakley and V. Jaggar, its cashier. He has from time to time placed and kept moneys on deposit in said bank; has remitted sums from time to time to deposit therein, and has had moneys used from the credits so placed in the bank to make loans, as in the case of the aforesaid two notes of $5,000 and $2,000 respectively. The notes were made by one Nolind and were bought either wholly or largely with the credit in said bank created by plaintiff's deposit account. The notes remained at all times in Oakley at said bank, and when later paid the proceeds were remitted to plaintiff in New Mexico. Beyond authorizing or directing the notes to be purchased, plaintiff took no further part in the matter, such as giving receipt upon payment, taking, recording, releasing, etc., security if any. Jaggar was given and exercised considerable authority and control over plaintiff's deposits and investments at Oakley, such as collecting the money, receiving and endorsing interest, etc. Plaintiff's knowledge of what was being done by the bank or Jaggar in relation to his deposits, his investments at Oakley, their payment or payment of interest thereon was rather general and he relied much on Jaggar to do what was needed to be done in his interest without explicit directions from plaintiff. In these matters Jaggar was plaintiff's agent with powers indicated rather by their course of business as stated rather than by definite statements. The letters from plaintiff to Jaggar show this dependence upon Jaggar and this deference to his judgment and discretion as to what was best to do in plaintiff's financial affairs. The course of conduct shows the notes and deposits, etc., to be held at Oakley as more than a temporary purpose."

Where was the situs of the notes for the purpose of taxation? It is insisted by plaintiff that intangibles like notes are to be treated as personal property, and that under the general rule such property should be taxed at the domicile of the owner. Under the statute all property in the state not exempt is subject to taxation. (R. S. 79-101.) In the matter of listing personal property for taxation it is provided that:

"All personal property subject to taxation of which such person, company or corporation is the owner, lessee or occupant, having any interest in or

exercising any control over any personal property, including all moneys in his possession, or subject to his order, check or draft, and all credits due or to become due from that person, company or corporation, whether in or out of the county or state in which such person may reside or such company be located, except as herein otherwise provided." (R. S. 79-301.)

Property in charge of agents, trustees or other representatives is to be listed by them (R. S. 79-303), but an exception is made that:

"Money collected by any agent for any person, company or corporation which is to be transmitted immediately to such person, company or corporation shall not be listed by such agent; but such agent shall if required by the assessor state under oath the amount of money in his hands and to whom the same is to be transmitted." (R. S. 79-302.)

The notes in question are deemed to be property within the meaning of the statute on taxation and may be levied upon under a tax warrant. (*Blain v. Irby,* 25 Kan. 499.) The notes in question had been kept in the state and had never been in the possession of the plaintiff at his domicile, but had been kept and handled by his representative in Kansas. While the general rule is that personal property like notes is deemed to follow its owner, it has been held that:

"The maxim of the common law does not always nor absolutely apply for the purpose of taxation to intangible personal property." (*Fisher v. Comm'rs of Rush Co.,* 19 Kan. 414.)

It is conceded to be within the power of the state to tax money, credits and investments of nonresidents which have been placed in the custody and control of a resident agent, and used by the agent in the owner's business. In *Wilcox v. Ellis,* 14 Kan. 588, a resident of Kansas sold land in Illinois, and took the notes of the purchaser for the amount of the purchase money. No deed of conveyance was executed, but it was agreed that as fast as the notes were paid the creditor would make a deed for a proportionate quantity of the real estate, not less than eighty acres. It was agreed that the notes should be left in the custody of a certain bank in Illinois which was the place of payment. They were never brought to Kansas and nothing pertaining to them or the debt evidenced by them was ever in Kansas, except that the owner resided here. A tax was levied upon them in Kansas on a valuation of $6,000, and it was held that they were taxable in Illinois where they were kept, the court saying:

"And while for some purposes in the law, by legal fiction, it follows the

person of the creditor, and exists where he may be, yet it has been settled that for the purposes of taxation this legal fiction does not, to the full extent, apply, and that such property belonging to a nonresident creditor, may be taxed in the place where the obligations are held by his agent."

In *Fisher v. Comm'rs of Rush Co.*, supra, where the notes were left in Iowa, it was held that under the facts of that case that a situs could only be given them in Kansas, by resort to a fiction, and that they were taxable in Iowa and not in Kansas. The converse of the rule applied in these cases would make the notes in question taxable in Kansas where they were kept and used by a representative of the plaintiff. The supreme court of the United States in the consideration of the situs of property for taxation said:

"If we look to the decisions of other states we find the frequent ruling that when an indebtedness has taken a concrete form and become evidenced by a note, bill, mortgage or other written instrument, and that written instrument evidencing the indebtedness is left within the state in the hands of an agent of the nonresident owner to be by him used for the purposes of collection and deposit or reinvestment within the state, its taxable situs is in the state." (*New Orleans v. Stemple*, 175 U. S. 309.)

The court in that case referred to *Catlin v. Hull*, 21 Vt. 152, 161, in which it was said:

"We are not only satisfied that this method of taxation is well founded in principle and upon authority, but we think it entirely just and equitable, that if persons residing abroad bring their property and invest it in this state for the purpose of deriving profit from its use and employment here, and thus avail themselves of the benefits and advantages of our laws for the protection of their property, their property should yield its due proportion towards the support of the government which thus protects it." (p. 317. See, also, *Buck v. Miami County*, 103 Kan. 270, 173 Pac. 344; *Bristol v. Washington County*, 177 U. S. 133; Note in L. R. A. 1915C. 914.)

Plaintiff refers to *Johnson County v. Hewitt*, 76 Kan. 816, 93 Pac. 181, where it was held that the transitory presence in a foreign state of intangibles or the naked custody of the same for safe-keeping was not enough to give them a situs, but the court in that case remarked that:

"Notes, mortgages, tax-sale certificates and the like might be brought into the state for something more than a temporary purpose, be devoted to some business use here and thus become incorporated with the property of this state for revenue purposes. Such a situs has aptly been termed a 'business situs.'" (p. 822.)

It was further added:

"It is not necessary to determine precisely what facts will be sufficient in every case to establish an independent business situs for notes and mortgages, but generally the element of separation from the domicile of the owner and fairly permanent attachment to some foreign locality should appear, together with some business use of them, or some power of managing, controlling or dealing with them in a business way." (p. 823.)

It is contended that the investment was not under the control of the cashier, Jaggar, nor used by him in the plaintiff's business in such a way that he can be regarded as the agent of plaintiff. There is evidence tending to show that plaintiff having a surplus in his account in the bank requested Jaggar to find an investment for him. Jaggar selected the notes in question as an investment as he had done in other instances for the plaintiff. Checks were given by plaintiff on his account for the purchase. The notes were not sent to plaintiff, but were put in a pouch containing plaintiff's papers and kept in the bank. Plaintiff never saw or handled them. The interest was collected by Jaggar and placed to his credit in the bank from time to time. When the notes became due Jaggar arranged for renewals, and other notes were taken by him and the original notes returned to the maker. When the new notes matured Jaggar collected the amounts due and placed them to his credit at the bank. Plaintiff stated that he received the money paid upon the notes, but there was evidence tending to show that it was deposited in the bank. Practically all his banking business was done with the bank, he deposited his money there, and occasionally borrowed money from the bank, and the course of business throughout was open to the inference that these notes held by the bank stood as security in his transactions with the bank. Jaggar, it appears, was intrusted with the control and collection of other debts due to him, paid taxes on his property there, and the moneys which he collected for plaintiff were deposited in the bank, and items paid out of the deposits. When plaintiff's deposits amounted to a considerable sum Jaggar procured investments or made loans for him. Under the testimony it became a fair question of fact for the court whether the methods of carrying on the business made Jaggar his agent, and whether the notes acquired a situs in Kansas for taxing purposes. Plaintiff asked for an injunction asserting that the notes were illegally assessed in that they were only held by the bank for temporary purposes. It devolved upon him to show that fact and that they were not held for some other purpose or use. That burden he did not meet or carry.

24—120 KAN.

Parman v. Lemmon.

The notes were kept in Kansas for years, were handled and renewed on the initiative of his representative. The assessor finding them in the bank placed them on the tax roll, and in the absence of evidence the presumption was that the officer did his duty in that respect. (*Washington v. Hosp*, 43 Kan. 324, 23 Pac. 564.) It was for the plaintiff to show that the notes were left with the bank for a temporary purpose, that is, for collection and immediate transmission of the money to the plaintiff. While plaintiff stated that all of his personal property was returned for taxation in New Mexico, the evidence satisfactorily shows that the notes were not listed for taxation in that state. On the whole testimony we think the court was warranted in finding that the notes had a business situs in Kansas, and therefore its judgment is affirmed.