No. 34,239

CHARLES B. RUSSELL and LOLITA RUSSELL JACKMAN, Administrators with the Will Annexed of the Estate of Flora B. Russell, Deceased, *Plaintiffs,* v. C. C. COGSWELL, W. G. FINK and LESTER LUTHER, as the State Tax Commission, etc., The State Commission of Revenue and Taxation, etc., and Its Members, JOHN McCUISH, WM. LJUNGDAHL and MARC BOSS, and The Director of Revenue, BERT E. MICHENER, substituted, *Defendants.*

(98 P. 2d 179)

Opinion filed January 27, 1940.

*M. A. Gorrill, Henry H. Asher* and *C. M. Gorrill,* all of Lawrence, for the plaintiffs.

*D. C. Hill,* of Wamego, *Frank G. Theis,* of Arkansas City, *Vernon Rosenstahl,* of Parsons, *Wm. J. Bell,* of Kansas City, and *Mason Mahin,* of Smith Center, for the defendants.

The opinion of the court was delivered by

HOCH, J.: The question here presented is whether, under the facts and circumstances hereinafter stated, Kansas has the power to impose an inheritance tax upon a trust estate consisting mainly of "intangibles" and held for many years by a trustee in another state. Plaintiffs are administrators of the estate of the decedent, who had created the trust about eleven years prior to her death. The case is here in an original action in mandamus brought to compel the defendant, the state tax commission, to cancel an inheritance tax which it had assessed against the trust estate. The action was instituted by amicable agreement between the parties in order to secure determination of the questions of law involved.

Flora B. Russell was for many years and until her death on October 26, 1936, a resident of Lawrence, Kan. On January 21, 1925, she executed a trust agreement conveying to a bank in Kansas City, Mo., as trustee, assets valued at $100,000 and consisting of $66,000 in cash and $34,000 in first-mortgage notes. The trustee was given exclusive right of possession, management and control, including the power to invest, reinvest, sell or exchange, in its absolute discretion, any part or all of the trust property; the trust instrument was irrevocable, Flora B. Russell retaining no right, at

any time, either to revoke, to change beneficiaries, to amend or modify, by will or otherwise, or to interfere in any way in the trustee's right of possession, management or control; the net income was to go to the trustor during her lifetime; after her death the income was to be shared equally for five years by her two sons, Charles B. Russell and Lloyd E. Russell, and at the end of five years the principal to go in equal parts to the two sons if living; if Charles B. Russell should die before the end of the five-year period his share of the income was to go to the trustor's granddaughter, Jessie Lolita Russell, until she reached the age of thirty years, when she was to receive her share of the principal; if Lloyd E. Russell died before the end of the five-year period the Wesley Foundation of Kansas University was to receive his share of the income for a period of ten years after the trustor's death, and thereupon to receive his share of the principal.

From 1925, when the trust was created, until the trustor's death in 1936 the assets have been, without interruption, in the actual, physical possession of the trustee, in the state of Missouri. All transactions relating to the trust have taken place in Missouri, and all records kept in the Missouri office of the trustee; all investments have been made, and all income derived within the state of Missouri; federal and state income taxes have been paid by the trustee exclusively in Missouri, and at no time has the trustor, trustee, or any beneficiary under the trust been assessed an ad valorem or other tax in Kansas upon the trust property. The trustor has, of course, paid income taxes in Kansas upon her income from such property.

At no time during her lifetime did Flora B. Russell attempt to change the beneficiaries, to interfere in the trustee's management or control, or to revoke or modify the trust agreement, by will or otherwise.

At the death of Flora B. Russell the assets of the trust were valued at $104,007.39 and were held by the Union National Bank of Kansas City, Mo., as trustee in succession to the trustee first named.

Flora B. Russell died possessed of considerable property. After listing such property in the inventory and appraisal filed with the commission, the administrators of her estate recited fully the facts concerning the trust estate. In doing so, in order to make full disclosure of all facts in which the commission might be interested, they asserted their claim that the trust estate was not taxable under the law. The steps thereafter taken need not be recited in detail.

Suffice it to say, that on November 16, 1938, the commission assessed an inheritance tax of $4,762.62 upon the whole estate, including the trust assets. The inheritance tax here involved is solely the assessment upon the trust property, being $2,282.76.

The Kansas inheritance tax law (G. S. 1935, 79-1501) attempts to impose an inheritance tax upon "All property, corporeal or incorporeal, and any interest therein, within the jurisdiction of the state, whether belonging to the inhabitants of the state or not" which shall pass in any one of the following three ways: (a) By will or intestate succession. (b) By deed, grant or gift "made in contemplation of death." (c) By deed, grant or gift "made or intended to take effect in possession or enjoyment after the death of the grantor." Bona fide purchases for full consideration are, of course, excepted.

In the instant case assessment was made under classification (c), supra. In other words, the trust agreement was held to constitute "a deed, grant or gift made or intended to take effect in possession or enjoyment after the death of the grantor."

The questions of law presented for review are:

1. Did the trust agreement constitute "a deed, grant or gift made or intended to take effect in possession or enjoyment after the death of the grantor?"

2. Subsequent to the trust indenture, or at the death of the trustor, did the trust assets in any way constitute "property within the jurisdiction" of Kansas upon which the right to assess the tax can be maintained?

3. Is there any provision in the inheritance tax law, section 79-1501, G. S. 1935, under which an inheritance tax can be assessed upon the trust involved in this case? Stated negatively, is there a vital omission in the statute which precludes lawful imposition of an inheritance tax upon such a trust?

4. Under the facts in this case would the imposition of the tax constitute the taking of property of the defendant without due process of law and in violation of the fifth and fourteenth amendments to the constitution of the United States.

All of these questions must be considered in the light of the essential facts and characteristics of the particular trust agreement here involved. Accordingly, let us, at the outset, summarize the material facts.

The salient characteristics of the trust instrument were:

(a) Full legal title vested in the Missouri trustee.
(b) Exclusive control and management vested in trustee.
(c) Net income to be paid to trustor during her lifetime.
(d) The conveyance irrevocable.
(e) No right retained by trustor to amend, modify, or change beneficiaries, either during lifetime, by will or otherwise.
(f) After death the net income and ultimately the assets to go to named beneficiaries on certain contingencies.

. So much for the terms of the instrument itself. At no time was there any attempt made by trustor or trustee to depart from any of the terms, or was any claim made inconsistent therewith.

To the terms of the instrument should be added these facts:

The office of the trustee has been maintained and all records relating to the trust kept exclusively in Missouri.

All transactions relating to the trust, including investment and reinvestment over the eleven-year period, took place in Missouri.

All trust property and investments and all evidence thereof have been at all times within the state of Missouri.

All earnings have been made exclusively within Missouri.

Ad valorem and income taxes, both state and federal, have been assessed and paid exclusively in Missouri.

We proceed to the issues of the case.

1. *Did the trust agreement constitute "A deed, grant or gift made or intended to take effect in possession or enjoyment after the death of the grantor?"*

Plaintiff contends that the Russell trust does not constitute a gift or grant "to take effect in possession or enjoyment after the death of the grantor." It may seem surprising that such a contention should seriously be urged in view of the plain language of the instrument. But attention is called by the plaintiff to various decisions of federal courts involving similar language which are said to support the contention. Those cases hold generally that where the title had passed entirely from the grantor when the trust deed was executed the subsequent death of the grantor becomes merely the incidence of possession and enjoyment by the beneficiary, and that the federal estate tax could not be imposed under the then-existing language of the federal law. Such a holding is called the "federal rule" by counsel, as distinguished from the rule of interpretation generally followed by the state courts. Although urging that the "federal rule" is the sounder and better one, plaintiff concedes that

if decisions of the state courts are followed the instrument here considered does constitute "a gift or grant to take effect in possession or enjoyment at the death of the grantor."

Let us consider whether there is in fact an irreconcilable conflict between the federal and the state decisions on this question. It must be remembered, at the outset, that the federal cases cited deal with the federal "estate tax," while the state cases deal with "inheritance taxes" similar to the Kansas statute. Though some courts have loosely used the two terms interchangeably, the fundamental difference between the two has been pointed out by the textbook writers, and many times, in well-considered judicial opinions. While the term "inheritance tax" has sometimes been used in a general sense to cover all "death taxes," a more restricted meaning is now generally accepted. An "estate tax" such as the federal law imposes is a tax upon the right to transmit or *transfer* property at death. It is levied upon the body of the estate before distribution. It does not at all involve, primarily, the right of the distributee to *receive* the property. An "inheritance tax," on the other hand, is not a tax upon the right to transmit or transfer, but is a *succession* tax, a tax upon the right of the distributee to *receive* the property. (26 R. C. L. 195, 196; 61 C. J. 1595, 1596; Gleason & Otis on Inheritance Taxation, 4th ed. p. 4; *Reinecke v. Trust Co.*, 278 U. S. 339, 73 L. Ed. 410, 49 S. Ct. Rep. 123; *In re Estate of Rising*, 186 Minn. 56, 242 N. W. 459; *Knowlton v. Moore*, 178 U. S. 41, 20 S. Ct. Rep. 747; *Silberman v. Blodgett*, 105 Conn. 192, 134 Atl. 778; *Trust Co. v. State*, 110 Kan. 153, 202 Pac. 853.) The two rights are distinct and separate. Neither is a natural right, but is a right conferred upon the individual by the state as an act of grace. The power which so confers the right may levy a tax upon its exercise.

With this distinction in mind between the two types of taxes, let us examine the so-called federal rule. The leading case relied upon by the plaintiff is *May v. Heiner*, 281 U. S. 238, 74 L. Ed. 826, 50 S. Ct. Rep. 308, decided by the United States supreme court April 14, 1930 (following *Reinecke v. Trust Co.*, supra, decided January 2, 1929). In that case the trust instrument was somewhat similar to the instant one. The husband of the trustor was to receive the net income during his life and after his death it was to go to the trustor during her lifetime, and after her death the trust assets were to be divided among her four children. The court was considering the validity of an estate tax imposed upon the trust under the federal

revenue act of 1918. Section 401 of the federal act assesses a tax *"upon the transfer* of the net estate of every decedent dying after the passage of this act." The court was determining whether in the case before it any property was *transferred from the trustor* to the living at the time of her death. The holding was that there was not; that as far as the trustor was concerned the property passed entirely from her at the time the trust instrument was executed, and that therefore the federal tax law was inapplicable. Quoting with approval from *Reinecke v. Trust Co.,* supra, the court said:

" 'In the light of the general purpose of the statute and the language of § 401 explicitly imposing the tax on net estates of decedents *we think it at least doubtful whether* the *trusts* or interests in a trust intended to be reached by the phrase in § 402 (c), "to take effect in possession or enjoyment at, or after his death," *include any others than those passing from the possession enjoyment or control of the donor at his death and so taxable as transfers at death under § 401.* That doubt must be resolved in favor of the taxpayer.' " (p. 244.) (Italics ours.)

" 'One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a *gift inter vivos, equally absolute and complete,* without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute.' " (p. 244.) (Italics ours.)

But plaintiff argues that the distinction which is drawn between estate and inheritance taxes has no significance in interpreting the holding of *May v. Heiner* and of other decisions of federal courts which have followed it. Plaintiff says that the determining factor in *May v. Heiner* was "the type and *completeness* of the gift of the corpus" at the time the trust instrument was executed, and that on that basis there is no controlling distinction to be drawn between the two types of taxes. In other words, if the gift is *complete* by the terms of the trust deed then there is no gift "to take effect in possession or enjoyment at the death of the grantor" regardless of whether the tax be an estate tax or an inheritance tax. The argument is not persuasive. Assuming for the moment, with the plaintiff, that the federal rule is based upon the *"completeness of the gift of the corpus,"* we think the distinction between the two kinds of taxes still clearly retains significance. An estate tax being upon the right to *transmit*—or, as the federal act calls it, a "charge upon the *transfer"* of the estate—a conclusion that the law does not apply because no property was transferred from the settlor at his death,

such transfer having already taken effect completely when the trust was created, is readily understandable.

But does this reasoning apply equally to an inheritance tax? We think not. If the gift was complete as far as the grantor was concerned when the trust was created, it may well be argued that an estate tax, being a tax upon the *transfer from the grantor*, may not be imposed at his death since no such transfer takes place at that time. But in the case of an inheritance tax the completeness of such previous transfer does not alter the fact that the right to receive does not accrue to the beneficiary until the death of the grantor.

The cases cited and others upon this point have been examined, but an analysis of them would unduly lengthen this opinion and add little to the discussion. We conclude that the Russell trust agreement clearly constituted "a grant or gift made or intended to take effect in possession or enjoyment at the death of the grantor."

2. *Subsequent to the trust indenture, or at the death of the trustor, did the trust assets in any way constitute "property within the jurisdiction" of Kansas upon which the right to assess the tax can be maintained?*

We are here presented with the question of *taxation situs* of intangible property and with the power of the domiciliary state of the creator or beneficiaries of a trust, to impose an inheritance tax upon such intangibles held by the trustee in another state. We have found pursuit of the subject a most interesting one. In able briefs both sides have cited many authorities. The cases cited have led ever on to others. One learned judge, of quantitative mood, fortifies his views with such an impressive array of citations that four solid pages of the embalming volume are required to record them. In such a judicial labyrinth we might here wander long, but with doubtful profit. One fact, however, emerges early and clearly from the decisions, and that is that the question cannot be settled by ancient maxims. Decisions of recent years have greatly modified earlier concepts. This is notably true with regard to the maxim *mobilia sequuntur personam*, to which reference will later be made. We have found, therefore, that on the narrowed issue before us there would be little, if any, value in a critical analysis of many of the older cases or in quoting from textbook conclusions that have not been brought down to very recent date. It will be more profitable, we think, inasmuch as the question involves the limitations of

power imposed upon the states by the federal constitution, to note the judicial trend indicated by leading cases, and particularly to state the applicable principles of law as they have been developed and applied by the more recent decisions of the United States supreme court.

The foundation doctrine, long established, is this: *No state can lawfully tax any property which is not within its jurisdiction.* That generalization does not, of course, in any way dispose of the problem before us, since the practical question remains as to what is "property" within the meaning of the doctrine. Nevertheless, this fundamental principle must not be forgotten nor its importance minimized.

It is elementary law that the doctrine applies without reservation to *real property*. The state of the owner's domicile has no taxing power whatever over the resident's land in another state. .

The doctrine has been unequivocally extended to cover *tangible personal property* situated in another state. This marks a clear departure from the ancient rule of *mobilia sequunter personam.* Such a departure was made almost inevitable by the great economic changes that came in the modern world. In ancient days the average individual possessed few chattels and these were of comparatively simple character. When he moved on to other climes he customarily took his "movables" with him. Accordingly, a presumption, hardening into a conclusion of law, arose that in all cases he had actually done so. Hence, when the sovereign had jurisdiction of the individual he had jurisdiction of the "mobilia" wherever located. But time marched on, and simplicity of life gave way to complexity. *Mobilia* became of infinite variety and character. Frequently they have become so localized that it would be fantastic for the law to treat them as having wholly followed the owner to another state where he resides. In such cases courts have refused to so apply the old *mobilia* maxim as to rob the state where they are actually held of the right to tax them. But being so taxed in the state where they are actually held, may they also be taxed—and to what extent—by another state where a person holding some interest in them may reside? In other words, to use Chief Justice Hughes' trenchant phrase, may they also be "attributable to the jurisdiction" of the state of the domicile, for taxation purposes? The importance of that question has grown with the expansion in the functions of government and attendant increase in the tax burden and with the

multiplying interrelationships between states and their citizens. The more recent decisions of the United States supreme court clearly disclose an appreciation of the necessity, in the light of these economic changes, of defining limitations upon the taxing power of the domiciliary state.

In the now leading case of *Frick v. Pennsylvania,* 268 U. S. 473, 69 L. Ed. 1058, 45 S. Ct. Rep. 603, the court said:

". . . as respects tangible personal property having an actual situs in a particular state, the power to subject it to state taxation *rests exclusively in that state, regardless of the domicile of the owner.*" (p. 489.) (Italics ours.)

Again, other decisions show that—

". . . the power to regulate the transmission, administration and distribution of tangible personal property on the death of the owner rests with the state of its situs, and that the laws of other states have no bearing save as that state expressly or tacitly adopts them. . . ." (p. 491.)

Again,

"*A state cannot, in computing the amount of succession tax* upon the estate of one of its residents, *take into consideration the value of tangible personal property* belonging to him, but *having an actual situs in another state.*" (69 L. Ed. 1059—Headnote 6. See Syl. ¶ 4 in Official Report.) (Italics ours.)

Moreover, it was made clear in the opinion that in determining the question of whether the domiciliary state has *power to tax,* it makes no difference whether the tax at issue is an *ad valorem* tax or an *estate* or *inheritance* tax. In either case the "property" sought to be taxed must be within the jurisdiction of the state seeking to tax it. Referring to the tax at issue in the case, the court said:

"The tax which it imposes is not a property tax, but one laid on the transfer of property on the death of the owner. This distinction is stressed by counsel for the state. But to impose either tax, the state must have jurisdiction over the thing that is taxed; and to impose either without such jurisdiction is mere extortion, and in contravention of due process of law." (p. 492.)

*Money* has been definitely classed as tangible personal property (*Blodgett v. Silberman,* 277 U. S. 1, 72 L. Ed. 749, 48 S. Ct. Rep. 410), and is subject to the holding in *Frick v. Pennsylvania,* supra. Accordingly, no state can assess a tax, either ad valorem or inheritance, on money not within its jurisdiction. In the instant case money constituted about two-thirds of the assets when the trust was created; only a small part, however, of the assets was in cash at the death of the trustor. At least as to the money which was part of the trust estate at the grantor's death we have no hesitancy in saying that it is outside of the jurisdiction of Kansas for any taxing purpose.

We arrive now to the more difficult question of the intangible personal property—the notes, bonds and mortgages.

Counsel on both sides have cited many cases in support of their position. For reasons heretofore stated the older cases must be viewed in the light of more recent decisions. If any semblance of consistency and order is to be deduced from the decisions which now point to the present state of the law on the subject, it is necessary, at the outset, to distinguish between two types of cases. Otherwise, the task of harmonizing a seeming conflict is rather hopeless. For convenience, we will here call them class A and class B. Class A consists of those cases wherein the trustee is little more than a legal titleholder who acts as custodian, bookkeeper and collector of income from specific securities. Class B consists of those cases wherein the trustee also exercises power of control and management, of investment and reinvestment, and as a result of such transactions the intangibles have become localized or tied into the economic life of the state where the trustee operates.

The cases principally relied upon by the defendant in this action fall within class A, and not in class B.

Class B cases have been often recognized both by state and federal courts. Innumerable cases might be cited which hold that localization of the intangibles in the state of the trustee by management and control, by investment and reinvestment, have given them a legal situs there. Where they are employed in a particular enterprise this has sometimes been referred to as a "business situs." Such localization or integration is particularly held to have taken place where the management operations of the trustee have taken place over a period of years. (Many cases will be found cited in 76 A. L. R. 806-829. In some there was investment of securities in a particular business operation; in others, not.)

This principle of localization was recognized and applied by this court in the case of *Buck v. Miami County,* 103 Kan. 270, 173 Pac. 344. A Kansas resident had sold a business in Wyoming and placed the proceeds in the hands of a Missouri investment company with full power to invest in notes and mortgages, to record, to release, to collect and to reinvest, the profits only being remitted to the principal. It was held that such securities being thus dealt with for a number of years had acquired a business situs in Missouri for purposes of taxation and were not taxable in Kanas. In the opinion will be found a brief but illuminating discussion. Numerous citations

of authority are given, including the prior Kansas case of *Johnson County v. Hewitt,* 76 Kan. 816, 93 Pac. 181. The court said:

"Under these authorities, it is beyond question that if the plaintiff lived in Kansas City, Mo., and dealt with the fund in question in the same way through an agency at Paola his securities would be taxable here. The controlling principle is no less plain because the geography of the situation is reversed. . . . This course of dealing for a number of years has given such securities a business situs for the purposes of taxation in the state where the agency is located." (p. 273.)

It is said, however, by defendant that *Buck v. Miami County,* supra, involved an ad valorem tax and therefore presents a different question than that which is presented in the case of an inheritance tax. As heretofore noted, however, it makes no difference whether it be a property tax or an inheritance tax when determining the narrow question of whether the "property" against which the tax is sought to be levied is properly "attributable to jurisdiction" of the state which seeks to assess the tax.

A case falling within class B was considered by the United States supreme court in the case of *Safe Deposit & T. Co. v. Virginia,* 280 U. S. 83, 74 L. Ed. 180, 50 S. Ct. Rep. 59, which has become perhaps the leading case on the point at issue. A resident of Virginia had conveyed securities to a Maryland trustee with power to change the investments, to collect the income, etc., and over a period of years the securities were so controlled and managed in Maryland. The court held that the securities had no legal situs for taxation purposes in Virginia, the domicile of the trustor. Among other things the court said:

"Ordinarily this court recognizes that the fiction of *mobilia sequuntur personam* may be applied in order to determine the situs of intangible personal property for taxation. (*Blodgett v. Silberman,* 277 U. S. 1.) But the *general rule must yield to established fact of legal ownership, actual presence* and *control* elsewhere and ought not to be applied if so to do would result in inescapable and patent injustice whether through double taxation or otherwise. . . .

"*Intangible* personal *property* may *acquire* a *taxable situs* where *permanently located,* employed and protected. . . .

"Here we must decide whether intangibles—stocks, bonds—in the hands of the holder of the legal title with definite taxable situs at its residence, not subject to change by the equitable owner, may be taxed at the latter's domicile in another state. We think not. The reasons which led this court in *Union Refrig. Transit Co. v. Kentucky,* 199 U. S. 194, and *Frick v. Pennsylvania,* 268 U. S. 473, to deny application of the maxim *mobilia sequuntur personam* to tangibles apply to the intangibles in appellant's possession. They have *acquired*

*a situs separate* from that of the beneficial owners. The adoption of a contrary rule would 'involve possibilities of an extremely serious character' by permitting double taxation, both unjust and oppressive. And the fiction of *mobilia sequuntur personam* 'was intended for convenience, and not to be controlling where justice does not demand it.'" (pp. 92, 93.)

Numerous cases are therein cited in support of the opinion.

The defendants, however, cite numerous cases which they say tend to establish a contrary doctrine and hold that the old maxim of *mobilia sequuntur personam* still applies fully in the case of intangibles. The principal case relied upon is *Blodgett v. Guaranty Trust Co.*, 114 Conn. 207, 158 Atl. 245, which went to the United States supreme court and is found in 287 U. S. 509, 77 L. Ed. 463. The facts in that case, however, disclose that it falls within class A, *supra*, and is therefore distinguishable from the case at bar. In the Blodgett case the trustor had conveyed to a trustee in another state certain specific securities to be held by the trustee, the income to go to the trustor during her lifetime and to her sons upon her death. The trustee was nothing more than a custodian or agent for collection of earnings on particular securities. We find nothing in the record to indicate that he had any power to invest or reinvest or any management or control. No investments were made by the trustee and no operations conducted giving to the corpus of the trust a local situs, as in the case of *Safe Deposit & Trust Co.*, supra, and which exist in the instant case. Application of the *mobilia* doctrine in a case where no taxation situs had accrued in the state where the trustee resided, is not inconsistent with limitation of the doctrine in cases where taxation situs has accrued.

What "property" then may still be said to remain "within the jurisdiction" of the state of the trustor's domicile, when the title is held in another state by a trustee who has there exercised over a period of years exclusive powers of control, management, investment and reinvestment? That question was considered by the United States supreme court in two recent cases. Because of the narrowed issue presented the decisions were awaited with more than ordinary interest by taxing officials and tax experts throughout the country. One was the case of *Curry v. McCanless*, 307 U. S. 357, 59 Sup. Ct. 900, 83 L. Ed. 865, and the other *Graves v. Elliott* (called the Brown case in the lower court), 307 U. S. 383, 83 L. Ed. 880, 59 Sup. Ct. 913. Both decisions were announced on May 29, 1939. In both cases the trustees holding title had exercised, over a period of

years, exclusive powers of management, investment and reinvestment. In both cases, as in the case at bar, beneficiaries under the trust were resident of the same state as the trustor. In both cases the issue was whether there was "property" within the state of the trustor's domicile sufficient to give that state constitutional power to impose an inheritance tax upon the trust assets, held by the trustee in another state.

We examine first the case of *Curry v. McCanless*. A Tennessee resident transferred one hundred or more bonds and other property to an Alabama trustee to be there held and managed. The income from part of the trust was to go to the trustor during her lifetime and other income to named beneficiaries, also residents of Tennessee. The *trustor reserved the right to dispose of all the trust property by will, and by will did make a disposition of it different from that provided in the trust instrument.* The case involved the power both of Tennessee and of Alabama to impose an inheritance tax against the trust property. While we are here concerned only as to the power of Tennessee, the domicile of the trustor, it may be noted that the court held that Alabama had taxing power by virtue of the situs of the trust transactions.

The court held that Tennessee also could tax. But what "property" did it find to exist in Tennessee as a constitutional support of the power to tax? Not in the trustor's mere retention of income, not in the expectant interests of the resident beneficiaries, but in the *power* which the trustor had reserved *to dispose of the property by will*, without regard to the terms of the trust instrument. That power, said the court, was a *potential source of wealth* in the hands of the trustor, and therefore "property" "within the jurisdiction" of Tennessee. The court said:

"The practical obstacles and unwarranted curtailments of state power which may be involved in attempting to prevent the taxation of *diverse legal interests* in intangibles in more than a single place, through first ascribing to them a fictitious situs and then invoking the prohibition of the fourteenth amendment against their taxation elsewhere, are exemplified by the circumstances of the present case. Here, for reasons of her own, the testatrix, although domiciled in Tennessee and enjoying the benefits of its laws, found it advantageous to create a trust of intangibles in Alabama by vesting legal title to the intangibles and *limited powers of control over them in an Alabama trustee.* But she also provided that by resort to *her power to dispose of property by will*, conferred upon her by the law of the domicile, the trust could be terminated and the property pass under the will. She thus created *two sets of legal relationships* resulting in *distinct intangible rights. . . .*" (p. 907.) (Italics ours.)

The court further said:

"The decedent's *power to dispose of the intangibles was a potential source of wealth which was property in her hands* from which she was under the highest obligation, in common with her fellow citizens of Tennessee, to contribute to the support of the government whose protection she enjoyed. *Exercise of that power,* which was in her complete and exclusive control in Tennessee, *was made a taxable event by the statutes of the state."* (p. 907.) (Italics ours.)

Again the court said:

". . . it is certain here that the intangibles for some purposes are identified with the trustee, their legal owner, at the place of its domicile and that in another and different relationship and for a different purpose—*the exercise of the power of disposition at death, which is the equivalent of ownership*—they are identified with the place of domicile of the testatrix, Tennessee." (p. 908.) (Italics ours.)

The decision was by a divided court, four members holding that the power of the trustor to set aside the trust by will was not such "property" in Tennessee as would give that state the power to tax. Nor were they or the other members able, apparently, to discover in the case any other "property" basis for supporting Tennessee's power to tax.

The second case was *Graves v. Elliott,* supra. The decedent, while a resident of Colorado, transferred to a Colorado trustee certain bonds to be held, with specified powers to administer the trust and invest and reinvest the trust fund. The trustor subsequently moved to New York state and was a resident there when she died. The power of New York to impose an inheritance tax upon the trust property was the question at issue. Here again was a case where it could be said that the intangibles, by virtue of control and management, by investment and reinvestment, had acquired a situs in Colorado. And again the court was confronted with the question of determining what "property right," if any, existed within the state of New York sufficient to make the trust taxable there. The income was to go to the trustor's daughter for life and thereafter to designated beneficiaries. The trustor reserved the right to remove the trustee, to change any beneficiary and to revoke the trust, but she died without having exercised such rights. Again by a five-to-four decision the court held that New York had the power to tax. But what was the "property" found in the state of New York? The "property" so found was the *power of revocation* held by the trustor during her life and relinquished unexercised at her death. The opening paragraph of the majority opinion reads as follows:

"We are asked to say whether the state of New York may constitutionally tax the relinquishment at death, by a domiciled resident of the state, of a power to revoke a trust of intangibles held by a Colorado trustee." (p. 914.)

Later on in the opinion the court said:

"The essential elements of the question presented here are the same as those considered in No. 339, *Curry v. McCandless,* decided this day. As is there pointed out, the *power of disposition of property is the equivalent of ownership. It is a potential source of wealth and its exercise in the case of intangibles is the appropriate subject of taxation at the place of the domicile of the owner of the power. The relinquishment at death, in consequence of the nonexercise in life, of a power to revoke a trust created by a decedent is likewise an appropriate subject of taxation."* (p. 915.) (Italics ours.)

Again further on the court said:

"For reasons stated in our opinion in *Curry v. McCandless,* supra, we cannot say that the legal interest of decedent in the intangibles held in trust in Colorado was so dissociated from her person as to be beyond the taxing jurisdiction of the state of her domicile more than her other rights in intangibles. *Her right to revoke the trust* and to *demand* the *transmission to her of the intangibles* by the trustee and the delivery to her of their physical evidences *was a potential source of wealth, having the attributes of property."* (p. 915.) (Italics ours.)

It thus appears that the only "property" which the court stated to be remaining in New York was the *power of revocation,* and that this power had been a "potential source of wealth" even though unexercised. This interpretation of the majority opinion was tersely stated by Chief Justice Hughes, who delivered the dissenting opinion. He said:

"Upon what ground then is it maintained that these securities are within the taxing power of New York? *Solely,* it appears, *upon the ground that the indenture* creating the trust in Colorado *reserved to the settlor a power of revocation.* This unexercised power is treated as carried by the settlor into New York and hence as bringing in its train the entire corpus of the trust property." (Italics ours.)

Again, there were four members of the court who found no "property" within New York to support the exercise of the taxing power, and the majority called attention to no such "property" other than *the power of revocation.*

If other factors alone, such as reservation of income or expectant interest of beneficiaries, are sufficient to give to the state of a trustor's domicile taxing jurisdiction of a trust fund long localized and integrated by investment and reinvestment in another state, why did not the court in the two cases just mentioned simply say so and thus avoid much judicial labor? The only reasonable answer is that the

court did not so regard them. After elaborate reasoning a majority of the court in one case found that the *power to revoke* constituted the "property" right remaining within the jurisdiction of New York, and in the other case the power to dispose of by will was the "property" right remaining in the state of Tennessee, which gave the state jurisdiction. Again, it may be noted that *Blodgett v. Guaranty Trust Co.,* supra, and others of like character, relied upon by defendant are not in point here, since no localization and integration of the securities in the state where the trust was administered was shown to exist in those cases. It is a substantial distinction based on logical considerations.

Counsel for defendants call our attention to the case of *Pearson v. McGrew* (U. S.), 84 L. Ed. 139, recently decided by the United States supreme court. In an opinion handed down on December 4, 1939, the court reversed the Oregon court which had held that Oregon was without jurisdiction to tax the transfer of certain intangibles held in trust in the state of Illinois. The decedent died testate as a resident of Oregon. In earlier years, while living in Illinois, he had placed various securities in the hands of an Illinois trust company, which was to act solely as his agent in collecting principal and income and in making investments. Apparently he had full power to take the funds away from the trust company at any time and to direct investments. He moved to Oregon in 1933, and in August, 1935, shortly before his death, directed the Illinois trust company to sell enough of his securities to realize $450,000, and with the proceeds to buy federal reserve notes. The trust company followed his directions, and on August 15 held $450,000 of federal reserve notes as his agent. On August 15, 1935, he executed an irrevocable trust agreement transferring the federal reserve notes to the trust company for the benefit of certain relatives. The trust company held the notes for four or five days, and from time to time after August 19 used them to purchase bonds and other personal property for the account of the trust. It appeared from the record that the irrevocable trust agreement was a gift "made in contemplation of death," and the question was whether Oregon had power to tax the transfer of August 15 as such a gift. It appears that the Oregon court held that Oregon did not have power to tax because neither the securities nor the cash used to buy the federal reserve notes or the notes themselves were ever in Oregon, but were at all times in Illinois, and that since the decedent had left them in Illi-

nois a few days prior to August 15 without any intention of bringing them to Oregon they had acquired a business situs in Illinois. Clearly under such facts no business situs had been established in Illinois. The irrevocable trust agreement was not made until a short time before decedent's death, and prior to the trust agreement the Illinois trust company had held the securities merely as agent. In its essential features the case is in no way parallel to the case here considered.

Let us now apply the principles and distinctions heretofore noted to the instant case. There was no power of revocation during lifetime or by will. There remained in the trustor no power of management or control or to change beneficiaries or to alter the terms of the instrument in any way. For eleven years the trustee exercised exclusive control and management. The funds were invested exclusively in Missouri. The earnings were made entirely in Missouri, and by investment and reinvestment over a period of eleven years the trust assets had become localized within that state. Such localization had over the whole period been recognized by the imposition of ad valorem and income taxes in Missouri alone, and not in Kansas. Under such facts and circumstances and in the light of the principles laid down by the highest court, what "property" can be said to remain in Kansas giving constitutional power to impose the tax? It is not to be found in the retention of income, for Kansas reached that for eleven years under the Kansas income tax law, and moreover, it is not the trustor's interest which here forms the basis of the attempted tax, since hers was not an interest which accrued "in possession or enjoyment at the death of the grantor." Can the expectant beneficial interests of the two sons, or of the granddaughter, or of Wesley Foundation be held to constitute "property" essential for maintaining the tax? Certainly their interests were not as fixed and assured as were those of the beneficiaries in the Tennessee or New York cases just discussed. Neither one of the sons, nor his estate, would take any benefits whatever under the trust unless the son outlived his mother, the trustor; nor would either of the sons or his estate receive any part of the corpus of the trust unless the son lived more than five years after the death of the mother. None of the other beneficiaries would receive any benefits under the trust unless the sons died within five years after the death of the trustor. Defendant concedes that the donees received no actual interest in or to the property until

after the death of the decedent. In no cases which we have been able to find, involving facts similar to the instant one, has such tenuous interests on the part of expectant beneficiaries been considered a "property right" sufficient to support the power to tax a trust of intangibles long integrated by investment and reinvestment in another state. If such an expectant interest of a beneficiary were to be regarded as sufficient to bring within the taxing jurisdiction of the state the whole corpus of a trust long integrated in the economic life of another state, situations might easily arise and would arise where the tax would exceed the total interest of the resident beneficiary. Moreover, if the mere residence of beneficiaries having such expectant interest be sufficient to support the power to tax, the power would equally exist if the *trustor* had at all times been a *resident of Missouri* rather than of Kansas. No one, we take it, would seriously contend that in the latter instance this state could have levied an inheritance tax upon the trust.

The importance of limitations upon the power of a domiciliary state to tax in a case like the instant one has already been suggested. While there is no prohibition in the federal constitution against double taxation, the desirability, both from a legal and ethical standpoint, of avoiding it as far as possible or practicable requires no argument. Innumerable comments to such effect by high courts might be cited. (For instance, see *Farmers Loan Co. v. Minnesota*, 280 U. S. 204, 211-213, 74 L. Ed. 371, 50 S. Ct. Rep. 98.) But the defendant says that the question of double taxation is not involved here, since Missouri has not assessed an inheritance tax upon the Russell trust. Plaintiff replies that this is due to an interpretation of the Missouri statute, made by the attorney general of that state, which may be temporary. With contentions that may be made in Missouri we are not concerned. Suffice it to say, that if the situation were reversed and the trust had been administered and by investment and reinvestment had acquired a legal situs in Kansas, the power of this state to assess an inheritance tax on the trust property would, in our opinion, be supported by an overwhelming weight of authority.

We conclude that the facts of the instant case provide no jurisdictional grounds for assessment of the tax by the Kansas commission.

3. *Is there any provision in the inheritance tax law, section 79-1501, G. S. 1935, under which an inheritance tax can be assessed upon the trust involved in this case? Stated negatively, is there a vital omission in the statute which precludes lawful imposition of an inheritance tax upon such a trust?*

A lengthy statement would be required to present this issue and to note the arguments advanced in able briefs by both parties upon the question, the determination of which may not be. free from difficulty. In view of the conclusions heretofore stated a determination of the question is not here necessary, and we do not now pass upon it.

4. *Under the facts in this case would the imposition of the tax constitute the taking of property of the defendant without due process of law and in violation of the fifth and fourteenth amendments to the constitution of the United States?*

In view of the conclusion heretofore stated, little need be said in answer to this question. It is well settled that any attempt of one state to tax property or property interests not within its jurisdiction is in violation of the fourteenth amendment to the federal constitution. (See *Frick v. Pennsylvania*, supra; *Farmers Loan Co. v. Minnesota*, supra; many older cases cited in *Metropolitan Life Ins. Co. v. New Orleans*, 205 U. S. 395, 51 L. Ed. 853, 27 S. Ct. 499.)

The writ should be allowed. It is so ordered.

THIELE, J., not participating.

HARVEY, J. (dissenting in part) : I agree that the trust instrument in question is properly classified under our statute (G. S. 1935, 79-1501) as a "deed, grant or gift . . . made or intended to take effect in possession or enjoyment after the death of the grantor." I dissent from the second paragraph of the syllabus and the corresponding portion of the opinion. I agree that in view of the decision of the court on the point last mentioned that it is not necessary in this case to determine whether or not the statute above cited authorizes a tax to be levied upon property which passes by a deed, grant or gift made or intended to take effect in possession or enjoyment after the death of the grantor.

ALLEN, J. (dissenting) : I agree to the first paragraph of the syllabus and the corresponding portion of the opinion.

The case of *Blodgett v. Guaranty Trust Co.*, 114 Conn. 207, 158 Atl. 245, affirmed in 287 U. S. 509, 77 L. Ed. 463, 53 S. Ct. 244, is precisely in point on the main issue.

In that case practically the same objections were raised to the imposition of the Connecticut tax that counsel for the plaintiffs are here raising against the assessment of the Kansas tax upon the trust in the Russell estate. The Blodgett case involved four individual cases where property was conveyed under an irrevocable trust or grant with a reservation of a life estate in the income to the settlor or grantor. In two of these cases (identical to the case at bar) the decedents had, a considerable time prior to their deaths, transferred tangible personal property to New York trustees under active and irrevocable trust agreements, reserving to themselves only a life interest in the income. The property continuously remained in the state of New York in the hands of the trustees from the date of the execution of the trust instruments until after the death of the decedents. The decedent-settlors were residents of Connecticut. The assets of the trusts were included in their gross estates at death and taxed by the Connecticut authorities as "gifts intended to take effect in possession or enjoyment at the death of the grantor-donor." One of the questions raised in this case was whether or not the property had a taxing situs in the state of Connecticut. It was contended in the Blodgett case by counsel for one of the estates that because the trust contract was made in New York and the assets of the trust were in the hands of the New York trustee, that it was therefore dependent for enforcement upon the laws of the state of New York and was therefore beyond the scope or control or disposition, distribution and succession by the laws of Connecticut. The Connecticut supreme court, however, applying the well-recognized rule of *mobilia sequuntur personam* held that the assets of the trust had their situs for inheritance taxation at the domicile of the decedent.

The terms of the Gibson trust in the Blodgett case are stated:

"Emma L. B. Gibson died April 9, 1930, always having been domiciled in Washington, Connecticut. On May 4, 1918, she gave a deed of certain real estate in Washington to a trustee, reserving to herself the net income thereof for her life with remainder at her death to her son in fee or, if he should not survive, to her grandchildren in fee. On April 5, 1918, Mrs. Gibson executed in New York an irrevocable trust deed covering certain intangible personal property consisting of stocks, bonds, and a check drawn by her to the order of the trustee. By terms of the deed, the net income was required to be paid to the settlor during her life and at her death the principal to her son or,

in case he did not survive, to the settlor's grandchildren. The trustee was at all times domiciled in New York, and the certificates of stock and the bonds were located in that state." (p. 210.)

It thus appears that there is no substantial difference between these trusts and the trust in the instant case. Was the property held by the trustee in New York taxable in Connecticut? On that point the court stated:

"The further contention is advanced on behalf of the Gibson estate that although such transfers, in general, be held to be taxable, the personalty trust in that case is not so subject to taxation by Connecticut, because Mrs. Gibson, although domiciled in Connecticut, while temporarily in New York executed there the contract placing in trust with a New York trustee the intangible personal property—stocks, bonds, and a check on a New York bank—the physical evidences of which were also in the latter state. As to the basic principle involved, the situation appears to be indistinguishable from that applicable in cases, such as *Silberman v. Blodgett,* 105 Conn. 192, 134 Atl. 778, 277 U. S. 1, 48 Sup. Ct. 410, in which it has been held that intangible personalty, although physically outside the state of the domicil of the owner, has such a situs at the domicil that its transfer on the death of the owner may be subjected to inheritance tax under the laws of the state of domicil. *First National Bank of Boston v. Maine,* (1932) 284 U. S. 312, 52 Sup. Ct. 27; *Bankers Trust Co. v. Greims,* 110 Conn. 36, 147 Atl. 290; *Blodgett v. New Britain Trust Co.,* 108 Conn. 715, 720, 145 Atl. 56; *Hopkins' Appeal,* 77 Conn. 644, 60 Atl. 657, *Gallup's Appeal,* 76 Conn. 617, 57 Atl. 699. The succession tax is 'prescribed in view of the death of a domiciled resident of this state whose land within this state and whose personal property, wherever situate, is governed as to its disposition, distribution and succession, by the laws of this state.' *Hopkins' Appeal,* supra, p. 649. This consideration extends to transfers of the nature here involved. 'There is no natural right to create artificial and technical estates with limitations over, nor has the remainderman any more right to succeed to the possession of property under such deeds than legatees and devisees under a will. The privilege of acquiring property by such an instrument is as much dependent upon the law as that of acquiring property by inheritance.' *Keeney v. New York,* supra, p. 533.

"*Bullen v. Wisconsin,* (1916) 240 U. S. 625, 36 Sup. Ct. 473, upheld subjection, by Wisconsin, to an inheritance tax on the fund under a trust the circumstances of creation (in Illinois) and the nature of which appear to be in all essential respects analogous to the Gibson trust. State court cases to a similar effect include *Lines' Estate,* 155 Pa. St. 378, 26 Atl. 728; *Countess de Noailles' Estate,* 236 Pa. St. 213, 84 Atl. 665; *In re Fulham's Estate,* 96 Vt. 308, 119 Atl. 433; *Douglas County v. Kountze,* 84 Neb. 506, 121 N. W. 593. *MacClurkan v. Bugbee,* 106 N. J. L. 192, 150 Atl. 443, appears to be distinguishable in both factual and statutory situation, including that the statute imposes the tax only when the transfer is 'made by a resident,' and the transferor at the time of the execution of the trust deed was a resident of Illinois and only subsequently became domiciled in New Jersey; also, the trust deed

contained no provision for the disposition of the corpus after the termination of life estates created by it, so that the remainder formed part of the decedent's estate at her death and as such was subject to the New Jersey inheritance tax.

"The representative of the Gibson estate relies largely upon the fact that the trust contract was made in New York with a New York trustee, claiming that as the contract is governed by and dependent for enforcement upon the laws of that state, it is beyond the scope of control of disposition, distribution, and succession by the laws of Connecticut. However, as we view it, such resort as might possibly be required to the New York laws for effectuation and performance of the contract would concern, only, 'the accidental situation of some personal property which may require the aid of the laws of that state for its reduction to possession,' or in some other respects, resembling in nature administration ancillary to that of the domicil. *Hopkins' Appeal,* supra, p. 653. Therefore, we hold this personalty trust to be subject to the Connecticut tax." (p. 221.)

See, also, *In re Ellis' Estate,* 169 Wash. 581, 14 P. 2d 37.

Clearly the gifts were intended to take effect in possession and enjoyment at the death of the donor. The suggestion that these assets in the hands of the trustee acquired a business situs outside this state is novel. I think the property was subject to taxation in the state of Kansas.